JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

DAVID B. GLAZER (D.C. 400966)
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105
TEL:   (415) 744–6491
FAX:   (415) 744-6476
E-mail:  david.glazer@usdoj.gov

Attorneys for Federal Defendants


# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF COLUMBIA


| | |
|---|---|
| MDEWAKANTON SIOUX INDIANS OF MINNESOTA, *et al.*,    ) ) ) | |
| Plaintiffs    ) ) | Case No. 1:16-cv-02323-RC |
| v.    ) ) | |
| K. JACK HAUGRUD, Acting Secretary of the Interior; U.S. DEPARTMENT OF THE INTERIOR, 1849 "C" Street, N.W. Washington, D.C. 20240    ) ) ) ) ) | |
| Defendants.    ) | |


# FEDERAL DEFENDANTS' MOTION TO DISMISS AND

# MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

I.   BACKGROUND .............................................................................................. 1

   A.   Procedural History........................................................................................... 1

   B.   Factual Overview ............................................................................................ 2

   C.   Standard of Review ........................................................................................ 6

      1.   Administrative Procedure Act ................................................................ 6

      2.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) ..................................... 7

      3.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ..................................... 8

      4.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7) ..................................... 8

II.   ARGUMENT................................................................................................. 10

   A.   Plaintiffs' Claims are Barred by the Statute of Limitations ........................... 11

   B.   Plaintiffs Have No Claim Under the APA ..................................................... 13

      1.   The APA is not a Substantive Grant of Jurisdiction................................... 13

      2.   Plaintiffs Fail to Challenge "Final Agency Action".................................... 14

      3.   Plaintiffs Have Not Exhausted Their Administrative Remedies ................. 16

   C.   Plaintiffs Have No Cause of Action Under the 1863 or Appropriations Acts .............. 20

   D.   Plaintiffs' Claims are Barred by Res Judicata................................................. 21

   E.   In the Absence of a Valid and Exhausted APA Claim That Is Not Time–Barred, Plaintiffs' Claim for Land Beneficially Owned by a Non-party Tribe Must Be Dismissed for Failure to Join a Necessary Party ........................................................ 25

III.   CONCLUSION............................................................................................. 26

## TABLE OF AUTHORITIES

**Federal Cases**

Alaska v. USDA,
  772 F.3d 899 (D.C. Cir. 2014) ........................................................................... 11

Alaska v. USDA,
  932 F. Supp. 2d 30 (D.D.C. 2013) ....................................................................... 11

Ali v. Rumsfeld,
  649 F.3d 762 (D.C. Cir. 2011) ............................................................................. 14

*Allen v. McCurry,
  449 U.S. 90 (1980) .............................................................................................. 21

Apotex, Inc. v. FDA,
  393 F.3d 210 (D.C. Cir. 2004) ............................................................................. 21

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ............................................................................................... 8

Bennett v. Spear,
  520 U.S. 154 (1997) ............................................................................................. 15

Brewer v. District of Columbia,
  105 F. Supp. 3d 74 (D.D.C. 2015) ....................................................................... 24

Browning v. Clinton,
  292 F.3d 235 (D.C. Cir. 2002) ............................................................................... 8

Burt Lake Band of Ottawa & Chippewa Indians v. Norton ,
  217 F. Supp. 2d 76 (D.D.C. 2002) ....................................................................... 19

C&E Servs. v. D.C. Water & Sewer Auth. ,
  310 F.3d 197 (D.C. Cir. 2002) ............................................................................. 14

*Califano v. Sanders,
  430 U.S. 99 (1977) ............................................................................................... 13

Cheyenne Arapaho Tribes of Okla. v. United States,
  558 F.3d 592 (D.C. Cir. 2009) ............................................................................. 12

*Darby v. Cisneros,
  509 U.S. 137 (1993) ............................................................................................. 16

Dep't of the Army v. Blue Fox,
  525 U.S. 255 (1999) ............................................................................................. 10

EEOC v. St. Francis Xavier Parochial Sch.,
   117 F.3d 621 (D.C. Cir. 1997) ........................................................................ 8

El Paso Nat. Gas Co. v. United States,
   605 F. Supp. 2d 224 (D.D.C. 2009) ................................................................ 7

Friends of Animals v. Ashe,
   174 F. Supp. 3d 20 (D.D.C. 2016) ................................................................ 15

Gallucci v. Chao,
   374 F. Supp. 2d 121 (D.D.C. 2005) ......................................................... 13, 14

Hardison v. Alexander,
   655 F.2d 1281 (D.C. Cir. 1981) ................................................................... 21

Herbert v. Nat'l Acad. of Scis.,
   974 F.2d 192 (D.C. Cir. 1992) ....................................................................... 8

In re Navy Chaplaincy,
   No. 1:07-mc-269 (GK), 2016 U.S. Dist. LEXIS 15294 (D.D.C. Feb. 9, 2016) ..................... 11

Jachetta v. United States,
   653 F.3d 898 (9th Cir. 2011) ....................................................................... 14

Jackson v. Bush,
   448 F. Supp. 2d 198 (D.D.C. 2006) ................................................................ 7

James v. U.S. Dep't of Health & Human Servs. ,
   824 F.2d 1132 (D.C. Cir. 1987) ............................................................... 18, 19

Kokkonen v. Guardian Life Ins. Co. of Am.,
   511 U.S. 375 (1994) ................................................................................. 7

Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Ashcroft,
   360 F. Supp. 2d 64 (D.D.C. 2004) ................................................................ 13

Littlewolf v. Hodel,
   681 F. Supp. 929 (D.D.C. 1988) ................................................................. 12

*Lujan v. Nat'l Wildlife Fed'n,
   497 U.S. 871 (1990) ................................................................................ 15

Marrese v. Am. Acad. of Orthopaedic Surgeons,
   470 U.S. 373 (1985) ................................................................................ 22

Menominee Tribe of Indians v. United States,
   726 F.2d 718 (Fed. Cir. 1984) .................................................................... 12

Merrell Dow Pharms., Inc. v. Thompson,
   478 U.S. 804 (1986) ................................................................................ 14

Miami Nation of Indians of Ind., Inc. v. U.S. DOI,
    255 F.3d 342 (7th Cir. 2001) ........................................................................... 18, 19

Moms Against Mercury v. FDA,
    483 F.3d 824 (D.C. Cir. 2007) ............................................................................... 7

Montana v. United States,
    440 U.S. 147 (1979) ............................................................................................. 21

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983) ................................................................................................. 7

Muwekma Ohlone Tribe v. Salazar,
    708 F.3d 209 (D.C. Cir. 2013) ....................................................................... 18, 19

Nat'l Ass'n of Home Builders v. Norton,
    415 F.3d 8 (D.C. Cir. 2005) ................................................................................. 15

NetworkIP, L.L.C. v. FCC,
    548 F.3d 116 (D.C. Cir. 2008) ............................................................................... 6

*Norton v. S. Utah Wilderness All.,
    542 U.S. 55 (2004) ........................................................................... 7, 13, 14, 15

NRDC v. EPA,
    513 F.3d 257 (D.C. Cir. 2008) .......................................................... 21, 22, 24, 25

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,
    498 U.S. 505 (1991) ............................................................................................. 26

P&V Enters. v. U.S. Army Corps of Eng'rs,
    516 F.3d 1021 (D.C. Cir. 2008) ........................................................................... 11

*Philippines v. Pimentel,
    553 U.S. 851 (2008) ............................................................................................... 9

Price v. Hawaii,
    764 F.2d 623 (9th Cir. 1985) ............................................................................... 14

Renne v. Geary,
    501 U.S. 312 (1991) ............................................................................................... 7

SBC Communs., Inc. v. FCC,
    407 F.3d 1223 (D.C. Cir. 2005) ........................................................................... 21

San Remo Hotel, L.P. v. City & Cty. of S.F. ,
    545 U.S. 323 (2005) ............................................................................................. 21

Scolaro v. Dist. of Columbia Bd. of Elections & Ethics ,
    104 F. Supp. 2d 18 (D.D.C. 2000) ......................................................................... 7

Sea-Land Servs. v. Gaudet,
    414 U.S. 573 (1974) .......................................................................................... 23

Smith-Haynie v. District of Columbia,
    155 F.3d 575 (D.C. Cir. 1998) .......................................................................... 11

Spannaus v. U.S. Dep't of Justice,
    824 F.2d 52 (D.C. Cir. 1987) ............................................................................ 11

Sprint Communs. Co., L.P. v. FCC,
    76 F.3d 1221 (D.C. Cir. 1996) .......................................................................... 12

Stand Up for California! v. U.S. Dep't of Interior,
    Civil Nos. 12-2039, 12-2071 (BAH), 2016 U.S. Dist. LEXIS 119649 (2016) ...................... 10

Stauffer Chem. Co. v. Food & Drug Admin. ,
    670 F.2d 106 (9th Cir. 1982) ............................................................................ 15

Steel Co. v. Citizens for a Better Env't,
    523 U.S. 83 (1998) ............................................................................................ 7

*Taylor v. Sturgell,
    553 U.S. 880 (2008) .......................................................................................... 23

United States v. Holliday,
    70 U.S. (3 Wall.) 407 (1866) ............................................................................ 18

United States v. Idaho ex rel. Dir., Dep't of Water Res.,
    508 U.S. 1 (1993) .............................................................................................. 10

United States v. Kwai Fun Wong,
    135 S. Ct. 1625 (2015) ...................................................................................... 11

United States v. Mottaz,
    476 U.S. 834 (1986) .......................................................................................... 10

United States v. Nordic Vill. Inc.,
    503 U.S. 30 (1992) ............................................................................................ 10

United States v. Rickert,
    188 U.S. 432 (1903) .......................................................................................... 18

United States v. Sandoval,
    231 U.S. 28 (1913) ............................................................................................ 18

United States v. Sherwood,
    312 U.S. 584 (1941) .......................................................................................... 10

Vann v. Kempthorne,
    534 F.3d 741 (D.C. Cir. 2008) .......................................................................... 26

W. Shoshone Bus. Council v. Babbitt,
    1 F.3d 1052 (10th Cir. 1993) ................................................. 19

W. Va. Highlands Conservancy v. Johnson,
    540 F. Supp. 2d 125 (D.D.C. 2008) ........................................ 11

Wash. Consulting Group, Inc. v. Raytheon Tech. Servs. Co.,
    760 F. Supp. 2d 94 (D.D.C. 2011) ......................................... 14

*Wolfchild v. Redwood County,
    824 F.3d 761 (8th Cir. 2016) ................................... 2, 6, 20, 23

*Wolfchild v. Redwood County,
    91 F. Supp. 3d 1093 (D. Minn. 2015) ........................... 2, 6, 13

*Wolfchild v. Redwood County,
    112 F. Supp. 3d 866 (D. Minn. 2015) ..................................... 23

*Wolfchild v. United States,
    62 Fed. Cl. 521 (2004) ..................................................... 3, 4

*Wolfchild v. United States,
    96 Fed. Cl. 302 (2010) ................................................... 1, 3, 5

*Wolfchild v. United States,
    101 Fed. Cl. 54 (2011) ................................................... 4, 5, 6

*Wolfchild v. United States,
    559 F.3d 1228 (Fed. Cir. 2009) ..................................... 1, 5, 22

*Wolfchild v. United States,
    731 F.3d 1280 (Fed. Cir. 2013) ......................................... passim

Woodford v. Ngo,
    548 U.S. 81 (2006) ........................................................... 20

Yankton Sioux Tribe v. U.S. HHS,
    533 F.3d 634 (8th Cir. 2008) ............................................... 24

Zynger v. Dep't of Homeland Sec.,
    615 F. Supp. 2d 50 (E.D.N.Y. 2009) ..................................... 14

**Federal Statutes**

5 U.S.C. § 551(13) .............................................................. 14

5 U.S.C. § 704 (2012) .............................................. 14, 15, 16

5 U.S.C. § 706 (2012) ........................................................... 6

25 U.S.C. § 5108 (2012) ........................................................ 4

25 U.S.C. § 5131 (2012) ....................................................... 12

25 U.S.C. § 5131(a) (2012) ............................................................................ 17

28 U.S.C. § 1343 (2012) ............................................................................... 14

28 U.S.C. § 1362 (2012) ............................................................................... 14

28 U.S.C. § 2401(a) (2012) ........................................................................... 11

28 U.S.C. § 2401(b) (2012) ........................................................................... 11

28 U.S.C. § 2501 (2012) ............................................................................... 13

28 U.S.C. §§ 2201, 2202 (2012) .................................................................... 14

42 U.S.C. § 1985 (2012) ............................................................................... 14

44 U.S.C. 1507 (2012) .................................................................................. 12


Act of Feb. 16, 1863, ch. 37, § 9, 12 Stat. 652, 654 ............................................ 2, 20

Act of Mar. 3, 1863, ch. 119, § 1, 12 Stat. 819.......................................................... 3

Act of Feb. 9, 1865, ch. 29, 13 Stat. 427 .................................................................. 3

Act of June 29, 1888, ch. 503, 25 Stat. 217, 228–29 ("1888 Act") ............................... 3

Act of Mar. 2, 1889, ch. 412, 25 Stat. 980, 992–93 ("1889 Act") ................................ 3

Act of August 19, 1890, ch. 807, 26 Stat. 336, 349................................................... 3, 4

Act of June 18, 1934, ch. 576, § 16, 48 Stat. 984, 987 ............................................... 4

Act of Dec. 19, 1980, Pub. L. No. 96–557, 94 Stat. 3262 ........................................... 5

**Other**

Restatement (Second) of Judgments § 27 (1982) ..................................................... 21

**Regulations**

25 C.F.R. § 2.8 .......................................................................................... 16

25 C.F.R. pt. 83 ......................................................................................... 19

25 C.F.R. §§ 83.5-83.7 ................................................................................. 19

25 C.F.R. § 83.8 ......................................................................................... 19

44 Fed. Reg. 7235 (Feb. 6, 1979) ................................................................... 12

59 Fed. Reg. 9280 (Feb. 25, 1994) .................................................................. 19

77 Fed. Reg. 59,963 (Oct. 1, 2012) ................................................................. 23

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ................................................................................. 8

Fed. R. Civ. P. 12(b)(7) ................................................................................. 8

Fed. R. Civ. P. 19(a)(1) ............................................................................................................. 9

Fed. R. Civ. P. 19(b) ............................................................................................................... 10

Federal Defendants K. Jack Haugrud, Acting Secretary of the Interior, and U.S. Department of the Interior move to dismiss the Complaint, which brings stale claims that have already been litigated in two other Circuits.[1]

## I.     BACKGROUND

### A.     Procedural History

This is the third case brought by descendants of Mdewakanton Sioux Indians of Minnesota identified on census rolls created in 1886 and 1889 (collectively, "the 1886 census"). In the first lawsuit, filed in the United States Court of Federal Claims in 2003, a group of over 20,000 plaintiffs[2] asserted that the United States breached duties assertedly created by statutes passed in response to the 1862 Sioux Uprising and owed to them as descendants of Mdewakanton Sioux Indians who were in Minnesota in 1886.  Those plaintiffs alleged that the federal government owed them rents from lands that they claimed should have been granted to them.  The Court of Federal Claims ruled in their favor, but was reversed on interlocutory appeal to the Federal Circuit.  *Wolfchild v. United States*, 559 F.3d 1228 (Fed. Cir. 2009).  After additional, protracted litigation in the Court of Federal Claims, the Federal Circuit rejected all of the plaintiffs' claims.  *Wolfchild v. United States*, 731 F.3d 1280 (Fed. Cir. 2013).  Eight months after that loss, plaintiffs filed suit in federal district court in Minnesota, this time asserting title to

---

[1] Federal Defendants respectfully submit that no administrative record is necessary for the Court to resolve the issues of law raised by this motion.  Accordingly, Federal Defendants have not submitted an index of the administrative record with this motion.  *See* Local Rule 7(n).  In addition, as argued in Section II.B, below, Plaintiffs' have no claim for judicial review, whether on an administrative record or otherwise.

[2] *See Wolfchild v. United States*, 96 Fed. Cl. 302, 310 (2010), *aff'd in part, rev'd in part*, 731 F.3d 1280 (Fed. Cir. 2013).

twelve square miles of land then occupied by others in Redwood County, Minnesota.[3]  The

district court entered judgment against them, *Wolfchild v. Redwood County*, 91 F. Supp.3d 1093

(D. Minn. 2015), which was affirmed by the Eighth Circuit, 824 F.3d 761 (8th Cir. 2016).  The

court of appeals held that the plaintiffs had no express or implied remedy through which to gain

possession of the contested land.  *Id*. at 768–70.  Plaintiffs followed that most recent loss with

this suit, filed in November 2016, six months after the Eighth Circuit affirmed the district court's

dismissal.

  B.  Factual Overview[4]

  In the mid-1800s, four bands of Sioux Indians, including the Mdewakanton, resided in

what is now Minnesota.  In exchange for aboriginal lands ceded by the bands, the United States

set aside a reservation in present-day southern Minnesota and promised monies and supplies.  In

1862, impelled by the government's failure to follow through on those promises, the Sioux

revolted, destroying property and killing many settlers.  However, some of the Sioux did not join

the uprising, and some actively defended the settlers.  Congress immediately enacted laws

declaring earlier Sioux treaties to be abrogated and providing for the removal of the Sioux from

Minnesota to reservations in Dakota and Nebraska.  At the same time, Congress included in

those statutes provisions to benefit individual Indians, identified as "each individual of the

before-named bands who exerted himself in rescuing whites from the late massacre of said

Indians," Act of Feb. 16, 1863, ch. 37, § 9, 12 Stat. 652, 654, "any meritorious individual Indian

---

[3] Plaintiffs sued the county, a number of townships, the Lower Sioux Indian Community, the Episcopal Church, and many individuals.  *Wolfchild v. Redwood County*, 91 F. Supp.3d 1093, 1098 (D. Minn. 2015).

[4] The background discussion is taken from the cited statutes and from the Federal Circuit and Eighth Circuit decisions and other decisions, as noted.

of said bands, who exerted himself to save the lives of the whites in the late massacre," Act of

Mar. 3, 1863, ch. 119, § 1, 12 Stat. 819 (together, "the 1863 Acts"), and "certain friendly Indians

of the Sioux Nation," Act of Feb. 9, 1865, ch. 29, 13 Stat. 427 ("1865 Act").  But because the

settlers in the area resisted any resettlement efforts, no lands were transferred under those acts.

Twenty years later, Congress passed an Act to help the destitute descendants of the Sioux

in Minnesota.  Appropriations Act of May 15, 1886, ch. 333, 24 Stat. 29, 39–40 ("1886 Act").

The Act authorized the Secretary of the Interior to acquire "agricultural implements, cattle, [and]

lands" for "the full-blood Indians in Minnesota belonging to the Medwakanton band of Sioux

Indians."  In order to determine who was eligible to receive benefits under this act, the Secretary

had a census taken of the Mdewakanton in Minnesota, the 1886 census of Walter McLeod,

which was updated in 1889 by Robert B. Henton.  *See Wolfchild v. United States*, 96 Fed. Cl.

302, 316 (2010).  Lands were acquired for Indians under the authority of the 1886 Act, but those

lands were quickly alienated.  Nonetheless, lands acquired with subsequent appropriations are

referred to as "1886 lands," and the censuses are sometimes referred to as the "1886 censuses." [5]

*See Wolfchild v. United States*, 62 Fed. Cl. 521, 528 (2004).

In appropriation acts of 1888, 1889, and 1890, Congress appropriated additional money

for the Secretary of the Interior to expend for the benefit of Mdewakanton Sioux residing in

Minnesota.  Act of June 29, 1888, ch. 503, 25 Stat. 217, 228–29 ("1888 Act"); Act of Mar. 2,

1889, ch. 412, 25 Stat. 980, 992–93 ("1889 Act"); Act of Aug. 19, 1890, ch. 807, 26 Stat. 336,

349 ("1890 Act") (collectively, "the Appropriations Acts").  The statutory description of the

beneficiaries expanded slightly year to year.  The final Act, of 1890, benefitted

---

[5] Plaintiffs append the two censuses as Exhibit Q to their complaint.  (*See* ECF No. 1, Compl.
¶ 17; ECF No. 1, at 345–50, Ex. Q.)

> [T]he full and mixed blood Indians in Minnesota heretofore belonging to the Medawakanton band of Sioux Indians, who have resided in said State since the twentieth day of May, eighteen hundred and eighty-six, or who were then engaged in removing to said State, and have since resided therein, and have severed their tribal relations . . . .

*Id.*, 26 Stat. 349.  All three "appropriations acts" restricted the benefits to Indians who had "severed their tribal relations."  *See Wolfchild v. United States*, 101 Fed. Cl. 54, 61 (2011).  The Appropriations Acts gave the Secretary discretionary authority to acquire for the beneficiaries "lands, agricultural implements, buildings, seeds, cattle, horses, food, or clothing[.]"  Act of August 19, 1890, ch. 807, 26 Stat. 336, 349.  Monies so appropriated were used to buy parcels of land in several locations in Minnesota.[6]  The United States currently holds that land in trust for three federally recognized tribes:  the Shakopee Mdewakanton Sioux Community, the Prairie Island Indian Community, and the Lower Sioux Indian Community ("the three Communities").  However, many of the descendants of Indians listed on the 1886 censuses do not belong to any of those Communities.  (*See* ECF No. 1, Compl. ¶ 60 (identifying Plaintiff members as not being members of any of the three Communities).)

In 1934, Congress enacted the Indian Reorganization Act ("IRA"), Act of June 18, 1934, ch. 576, § 16, 48 Stat. 984, 987.  The IRA provided a means for Indian communities to organize, and the three Communities did so.  In addition, the IRA allowed the United States to acquire land "for the purpose of providing land for Indians," such acquisitions to be held by the United States "in trust for the Indian tribe or individual Indian for which the land is acquired[.]"  Act of June 18, 1934, ch. 576 § 5, 48 Stat. 985, *codified at* 25 U.S.C. § 5108.  The government

---

[6] "The lands were purchased in three separate areas of Minnesota, and by 1980 they consisted of (1) approximately 260 acres in Scott County (the 'Shakopee' lands), (2) approximately 575 acres in Redwood County (the 'Lower Sioux' lands), and (3) approximately 120 acres in Goodhue County (the 'Prairie Island' lands)."  *Wolfchild v. United States*, 62 Fed. Cl. at 528 (citing H.R. (Footnote continued)

accordingly acquired additional territory for the Prairie Island and Lower Sioux Indian Communities.  However, parcels acquired earlier under the 1888–1890 Appropriation Acts were held for the benefit of the 1886 census Indians and their descendants.  In 1980, Congress addressed this discrepancy by declaring that the lands acquired under the 1888–1890 Appropriation Acts, which had been "held by the United States for the use or benefit of certain Mdewakanton Sioux" in the State of Minnesota would "hereafter be held by the United States . . . in trust for [the three Communities]."  Act of Dec. 19, 1980, Pub. L. No. 96–557, 94 Stat. 3262 ("1980 Act").

As noted above, Mdewakanton Sioux who were descendants of Indians on the 1866 census rolls sued in the Court of Federal Claims in 2003, asserting that the 1888–1890 Appropriation Acts created a trust for their benefit, which the United States breached by allowing proceeds from the lands to go to the three Communities.  After extensive legal and historical analysis, the Federal Circuit determined on interlocutory appeal that the Appropriation Acts did not create a trust for the benefit of the Loyal Mdewakanton, and even if it did, such a trust would have been terminated by the 1980 Act.  *Wolfchild v. United States*, 559 F.3d at 1238–60.  On remand, several groups of plaintiffs sought to amend their complaints to allege a variety of claims under the 1863 Acts, the 1888–1890 Acts, the Indian Non-Intercourse Act, and the Takings Clause of the Fifth Amendment.  The Court of Federal Claims allowed amendment only for claims under the 1888–1890 Acts[7] and only for pre-1980 revenues.  *Wolfchild v. United*

---

Rep. No. 96-1409, at 4 (1980)).

[7] In rejecting claims based on the 1863 Acts, the Court of Federal Claims stressed the Acts' "unambiguous, plainly discretionary terms" and held that those Acts "cannot be read as imposing a specific money-mandating duty upon the government."  *Wolfchild v. United States,* 101 Fed. Cl. 54, 72 (2011).

*States*, 96 Fed. Cl. 302 (2010); 101 Fed. Cl. 54 (2011).  The Federal Circuit affirmed the lower

court's refusal to entertain claims under any but the 1888–1890 Acts, *Wolfchild v. United States*,

731 F.3d at 1291–95, but reversed its findings of liability and damages under those Acts, *id*. at

1288–91.

      Immediately after their most recent Federal Circuit loss, Plaintiffs sued in *Wolfchild v.*

*Redwood County* to recover land they claimed was rightfully theirs, litigation which, as noted

above, ended with an adverse judgment in district court, 91 F. Supp.3d 1093 (D. Minn. 2015),

that was affirmed on appeal, 824 F.3d 761 (8th Cir. 2016).

      In this action, Plaintiffs renew their claims under the 1863 Act, 1888–1890 Act, and the

1980 Act, seeking to vindicate their claimed entitlement to both revenues and land.  (ECF No. 1,

Compl. ¶¶ 238, 240, 251–52, 258–59.)

      C.      <u>Standard of Review</u>

            1.      <u>Administrative Procedure Act</u>

      Plaintiffs purport to bring suit under the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 706, (ECF No. 1, Compl. ¶¶ 1–4),[8] which is a limited waiver of the government's sovereign

immunity that requires courts to uphold agency actions unless they are "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law[.]"  *NetworkIP, LLC v. FCC*,

548 F.3d 116, 121 (D.C. Cir. 2008) (*quoting* 5 U.S.C. § 706(2)).  An agency decision is arbitrary

and capricious if it "relied on factors which Congress has not intended it to consider, *entirely*

failed to consider an important aspect of the problem, offered an explanation for its decision that

runs counter to the evidence before the agency, or is so implausible that it could not be ascribed

---

[8] As explained in Section II.B, below, Plaintiffs in fact do not state a valid APA claim.

to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added); *see also Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 66 (2004) (APA limitations design to protect agency discretion).

### 2.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction is a threshold issue, which should be addressed prior to any consideration of the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). Because "[f]ederal courts are courts of limited jurisdiction . . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *accord Renne v. Geary*, 501 U.S. 312, 316 (1991). Therefore, to survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *El Paso Natural Gas Co. v. United States*, 605 F. Supp. 2d 224, 227 (D.D.C. 2009) ("When evaluating subject matter jurisdiction, plaintiffs bear the burden of proof.") (citation omitted). When the United States is the defendant, "a plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

"In ruling upon a motion to dismiss brought under Rule 12(b)(1), a court must construe the allegations in the complaint in the light most favorable to the plaintiff." *Scolaro v. Dist. of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citation omitted). "But where necessary, the court may consider the complaint supplemented by undisputed facts

evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted).

### 3.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a cause of action and must be disregarded. *Id.* (citing *Twombly*. 550 U.S. at 555).  Similarly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  In evaluating a Rule 12(b)(6) motion, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### 4.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7)

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to join a party under Rule 19.  That Rule, in turn, provides that an absent party must

be joined if adjudication of the plaintiff's claim would severely prejudice the absent party's

interests.  Where the absent party cannot be joined because it enjoys immunity, the claim may

instead be dismissed.  Rule 19 is, at bottom, an equitable rule designed to balance the interests of

the parties to an action with the efficient resolution of the dispute before the court and the

preservation of the respect accorded judicial decrees.  *Republic of the Philippines v. Pimentel*,

553 U.S. 851, 862–63 (2008).

> Rule 19(a) provides that
>
> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  The Rule further provides that

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;

9

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  In short, "whether a party is indispensable for a just adjudication requires a determination regarding whether the absent party is necessary to the litigation; if so, whether the absent party can be joined in the litigation; and if joinder is infeasible, whether the lawsuit can nevertheless proceed 'in equity and good conscience.'"  *Stand Up for California! v. U.S. Dep't of Interior*, Civ. No. 12-2039 (BAH), Civ. No. 12-2071 (BAH), 2016 U.S. Dist. LEXIS 119649, at \*79–80 (D.D.C. Sept. 6, 2016) (quoting *Kickapoo Tribe of Indians of the Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995) (other citation and internal quotation marks omitted)).  Where a party may be prejudiced by a judgment rendered in its absence and where that party is immune from suit, dismissal may be warranted without consideration of any other factors.  *Id*. at \*83–84 (citing *Kickapoo Tribe*, 43 F.3d at 1496–98).

## II.   ARGUMENT

The United States is immune from suit unless it consents to be sued.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986) (citation omitted).  Congress alone may grant consent to suit, and its consent—which is in effect a waiver of sovereign immunity—must be "unequivocally expressed" in the statutory text.  *United States v. Idaho, ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 6 (1993) (citations omitted); *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).  "[T]he Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] . . . beyond what the language requires."  *United States v. Nordic*

*Vill., Inc.,* 503 U.S. 30, 34 (1992) (internal citations and quotations omitted).  As discussed below, Plaintiffs' claims fail to satisfy the time limit on suits against the United States provided by Congress.  Plaintiffs' claims also do not fall within the only applicable waiver of sovereign immunity,[9] that provided by the APA, for several reasons.  Beyond that, some of Plaintiffs' claims are barred by claim and issue preclusion, and some implicate the interests of a party that cannot be joined to this action.  All of Plaintiffs' claims should be dismissed.

A.    Plaintiffs' Claims are Barred by the Statute of Limitations

The statute of limitations governing general claims against the United States, 28 U.S.C. § 2401(a), explicitly provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The D.C. Circuit has interpreted § 2401(a) as jurisdictional.[10]  *See P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008); *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987); *Alaska v. U.S. Dep't of Agric.*, 932 F. Supp. 2d 30, 33 (D.D.C. 2013); *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008).

---

[9] Plaintiffs expressly rely on the APA.  (*See* ECF No. 1, Compl. ¶¶ 1–4.)

[10] This Court recognized the "longstanding precedent in our Circuit" holding that § 2401(a) is jurisdictional, *Alaska v. U.S. Dep't of Agric.*, 932 F. Supp. 2d 30, 33 (D.D.C. 2013) (collecting cases), *rev'd*, 772 F.3d 899 (D.C. Cir. 2014), a holding that was not questioned by the D.C. Circuit on appeal.  *Alaska v. U.S. Dep't of Agric.*, 772 F.3d 899 (D.C. Cir. 2014).  Although a recent Supreme Court case has ruled that the statute of limitations in 28 U.S.C. § 2401(b), applicable to Federal Tort Claims Act suits, is not jurisdictional, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015), this Circuit has thus far not applied that analysis to the limitations provision of 28 U.S.C. § 2401(a).  *In re Navy Chaplaincy*, No. 1:07-mc-269 (GK), 2016 U.S. Dist. LEXIS 15294, at *8 (D.D.C. Feb. 9, 2016).  But even if the limitations period of Section 2401(a) were a "run-of-the-mill statute of limitations," *Wong*, 135 S. Ct. at 1633, and thus not jurisdictional, Plaintiffs' claims would still be untimely and subject to dismissal under Rule 12(b)(6).  *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 577–78 (D.C. Cir. 1998) (statute of limitations defense properly raised by dispositive motion under Rule 12(b)(6)).

As the Federal Circuit has already ruled, Plaintiffs' claims based on rights allegedly arising from the 1888–1890 Appropriations Acts accrued no later than 1981 and 1982, when revenues were disbursed to the three Communities.[11]  *Wolfchild v. United States*, 731 F.3d at 1290–91.  That ruling controls here.  "[A] cause of action accrues when the injured party discovers—or in the exercise of due diligence should have discovered—that it has been injured." *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) (citations omitted). Moreover, actual knowledge of facts supporting a claim is not required; constructive or inquiry notice is sufficient, absent evidence that the facts underlying the Plaintiffs' claims were either "inherently unknowable" or actively concealed.  *Menominee Tribe of Indians v. United States*, 726 F.2d 718, 720–21 (Fed. Cir. 1984).[12]  Plaintiffs were on notice in 1980 that the beneficial interest in the contested lands had been transferred to the three federally recognized tribes, and no later than 1981 or 1982 that monies generated by the 1886 lands were being paid to others. That notice is fatal to all of Plaintiffs' claims, because all of their claims can be distilled to the allegation that the benefits of the Appropriation Acts should have gone to them instead of others.[13]  (*See* ECF No. 1, Compl. ¶¶ 238, 251–52, 258–59.)  Beyond that, Plaintiffs' claims to

---

[11] Similarly, claims to any interest in lands under the 1980 Act accrued in 1980, when that statute was enacted.  *See Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 593–94, 596–97 (D.C. Cir. 2009) (claims to land accrued when Congress transferred interests in land to other owners).

[12] For instance, in *Littlewolf v. Hodel*, 681 F. Supp. 929 (D.D.C.1988), *aff'd sub nom. Littlewolf v. Lujan*, 877 F.2d 1058 (D.C. Cir. 1989), the court upheld a six-month limitations period against constitutional challenge, dismissing the plaintiffs' argument their poverty and lack of education made it unrealistic—hence inherently unreasonable—for them to bring suit within the limitations period; instead, the court found that the plaintiffs were properly charged with knowledge of their affairs and legal rights.  681 F. Supp. at 941–42 (citing *Menominee Tribe*, 726 F.2d 718).

[13] To the extent that Plaintiffs complain that they do not appear on the list of federally recognized tribes published under 25 U.S.C. § 5131, any such claim is also time-barred.  The Department of the Interior published the first tribal list in 1979, and that list did not include the "Mdewakanton (Footnote continued)

lands authorized under the 1863 Act that were sold to others no later than 1895 are barred by laches and have been for over 150 years.  *Wolfchild v. Redwood County*, 91 F. Supp.3d at 1102–05.[14]

     B.     <u>Plaintiffs Have No Claim Under the APA</u>

     1.     <u>The APA is not a Substantive Grant of Jurisdiction</u>

While the APA is a limited waiver of sovereign immunity, it is not a source of substantive law or a grant of subject matter jurisdiction.  *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977); *Gallucci v. Chao*, 374 F. Supp. 2d 121, 128 (D.D.C. 2005); *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Ashcroft*, 360 F. Supp. 2d 64, 66 (D.D.C. 2004).  In order to obtain judicial review of agency action, a plaintiff must identify a final agency action governed by other substantive law, or show that it has exhausted administrative mechanisms for compelling agency action that the agency was required by law to take but did not.  *See S. Utah Wilderness Alliance*, 542 U.S. at 62–65.  Plaintiffs' Count I, alleging generally a violation of the Administrative Procedure Act, does neither.  Therefore, Plaintiffs' Count I does not come within waiver of sovereign immunity afforded by the APA.  Because a stand-alone APA claim—in other words, a claim that is untethered from any basis in substantive law—does not lie within

---

Sioux Indians of Minnesota."  Indian Tribal Entities That Have A Government-To-Government Relationship with the United States, 44 Fed. Reg. 7235 (Feb. 6, 1979).  Therefore, Plaintiffs were put on notice of a potential claim for failure to list the Mdewakanton in 1979, almost thirty years before they commenced the first of their lawsuits.  *See Menominee*, 726 F.2d at 721 (inquiry notice sufficient).  Indeed, publication in the Federal Register of a document required by Congress to be so published provides sufficient notice of its contents.  44 U.S.C. § 1507.

[14] Any claim for money damages arising from those land sales would be barred by the six-year statute of limitations at 28 U.S.C. § 2501, applicable to actions in the Court of Federal Claims.  *Wolfchild v. United States*, 731 F.3d at 1292–93.

this Court's jurisdiction, Count I must be dismissed.[15]   *See Chao*, 374 F. Supp.2d at 128.

### 2.   Plaintiffs Fail to Challenge "Final Agency Action"

The APA provides that "[a]gency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court are subject to judicial review."[16] 5 U.S.C. § 704 (emphasis added).   The APA limits the definition of "action" to an "agency rule, order, license, sanction [or] relief[.]"   *S. Utah Wilderness Alliance*, 542 U.S. at 62 (quoting 5 U.S.C. § 551(13)).   And while the APA may allow a party to sue to "compel agency action unlawfully withheld," *id.* (quoting 5 U.S.C. § 706(1)), such a suit must seek to compel a *discrete* agency action, coming within the limitations of Section 551(13), that the agency is *required* to take.   *Id.* at 62–65.

---

[15] Just as the APA does not confer subject matter jurisdiction, neither does the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.   *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *C&E Services, Inc. of Wash. v. Dist. of Columbia Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (citing S*chilling v. Rogers*, 363 U.S. 666, 677 (1960)).   The other bases of subject matter jurisdiction on which Plaintiffs rely are similarly infirm.   (*See* ECF No. 1, Compl. ¶ 1).   The federal question statute does not afford jurisdiction by itself, but rather requires an independent source of substantive law.   *See, e.g.*, *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807–08 (1986) (claim "arising under" federal question statute, 28 U.S.C. § 1331 must be grounded in independent source of federal law); *Wash. Consulting Grp., Inc. v. Raytheon Tech. Servs. Co.,* 760 F. Supp. 2d 94, 106 (D.D.C. 2011) (finding no federal question). Plaintiff is ineligible to assert jurisdiction under 28 U.S.C. § 1362 because that provision only applies in cases brought by federally recognized tribes.   *Price v. Hawaii*, 764 F.2d 623, 626 (9th Cir. 1985).   Finally, 28 U.S.C. § 1343, governing certain civil rights actions, by its terms does not apply.   Rather, that provision applies only to (1) actions for alleged violations of 42 U.S.C. § 1985, concerning conspiracies to deprive individuals of civil rights, (2) actions alleging deprivations of rights under color of state law; or (3) actions for violations of federal statutes securing civil rights, including voting rights.   *See Zynger v. Dep't of Homeland Sec.*, 615 F. Supp. 2d 50, 56 (E.D.N.Y. 2009).   Here, plaintiffs seek monies and land they claim are owed them through congressional appropriations; they do not seek to vindicate civil rights (much less voting rights).   In addition, 28 U.S.C. § 1343 does not waive the government's sovereign immunity.   *Jachetta v. United States*, 653 F.3d 898, 907–08  (9th Cir. 2011).

[16] Plaintiffs do not bring claims under a separate statutory right-of-review provision; therefore, section 704 of the APA applies here.

An action is "final" only insofar as it is not a "preliminary, procedural, or intermediate agency action or ruling." *See* 5 U.S.C. § 704.  Actions that do not constitute final agency action are not independently reviewable. *S. Utah Wilderness Alliance*, 542 U.S. at 61–62; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (2005) (citing *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001) ("finality" is a jurisdictional requirement)).  An agency action will be considered final if it (1) "mark[s] the consummation of the agency's decisionmaking process," and (2) is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations marks and citations omitted); *see also Stauffer Chemical Co. v. FDA*, 670 F.2d 106, 108 (9th Cir. 1982) ("In general, action by subordinate agency officials is not final agency action subject to judicial review.") (citations omitted).

Here, Plaintiffs have identified *no* agency action, must less final agency action, that they seek to have the Court review.  Plaintiffs complain of the Department of the Interior's "policies, practices, and customs" (*see* ECF No. 1, Compl. ¶¶ 236, 237, 252, 258), but they fail to challenge *discrete agency action*, rather than broad policies and practices that are not subject to judicial review. *S. Utah Wilderness Alliance*, 542 U.S. at 66–67; *Lujan*, 497 U.S. at 891–92; *see Friends of Animals v. Ashe*, 174 F. Supp. 3d 20, 36–38 (D.D.C. 2016) (dismissing challenge to agency "policy").  Plaintiffs also complain of the Department's failure to provide them rights to the 12 square miles of land they claim (Compl. ¶¶ 237, 252, 258), but they fail to identify a statutory mandate that would require the Department to convey to them land currently owned by others.  And as noted in Sections I.A and I.B, above, nothing in the 1863 Act or the Appropriation Acts provides Plaintiffs with any statutory entitlement to the land transfer they seek.  That

15

claim is thus subject to dismissal.  *See People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097–99 (2015) (dismissing claim alleging failure to enact and apply regulations).

Finally, even if Plaintiffs had a colorable claim that the Department should have taken action that it has not, Plaintiffs have failed to exhaust their administrative remedies provided for such a claim, as argued below.

3.     Plaintiffs Have Not Exhausted Their Administrative Remedies

Section 10(c) of the APA provides that judicial review is available for "final agency action for which there is no other adequate remedy in a court," and that "[a] preliminary, proce-dural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."  5 U.S.C. § 704.  It further provides that

> agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, *unless the agency otherwise requires by rule* and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

*Id.* (emphasis added).  "Section 10(c) explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule[.]"  *Darby v. Cisneros*, 509 U.S. 137, 147 (1993). As discussed below, Department of the Interior regulations expressly provide administrative procedures that must be exhausted before a plaintiff bring suit in district court.

a)     Plaintiffs have not exhausted their remedies as to claims for "failure to act"

Under 25 C.F.R. § 2.8 (Appeal from inaction of official), an aggrieved party must appeal administratively from the failure of an Department of Interior official to take administrative action.  Although as argued in Section II.B.2 above, Plaintiffs have no cognizable claim for agency "failure to act," even if they had, it would be subject to dismissal for Plaintiffs' failure to

exhaust their administrative remedies.  Section 2.8 requires that an aggrieved party file a written

appeal with the agency that the party claims has failed to act, and informal communications do

not satisfy that requirement.  *Ass'n of Flight Attendants-CWA, AFL-CIO v. Chao*, 493 F.3d 155,

158 (2007); *Gilmore v. Weatherford*, 694 F.3d 1160, 1167–68 (10th Cir. 2012); *Allen v. United

States*, 871 F. Supp.2d 982, 993 (N.D. Cal. 2012).  In this case, Plaintiffs do not plead that they

have submitted any administrative appeal challenging any denial of any of their requests for

relief.  They have thus failed to satisfy the requirements of 25 C.F.R. § 2.8, and their claims must

be dismissed.

> b)     Plaintiffs have not exhausted their remedies as to their claim to be
> a federally recognized tribe

Plaintiffs' claims may seem to presuppose that the Mdewakanton Sioux Indians of

Minnesota constitute a federally recognized tribe (*see* ECF No. 1, Compl. ¶¶ 12, 233, 245, 255),

but at the same time Plaintiffs acknowledge that they are not included on the list of federally

recognized tribes published under 25 U.S.C. § 5131(a) (*see* Compl. ¶¶ 235, 250) and, indeed, the

Secretary of the Interior has not accorded them formal recognition (*see id*. ¶¶ 238, 257).  To the

extent Plaintiffs seek to secure the benefits of formal recognition (*see id*. ¶ 238 (alleging failure

by government to provide Plaintiff Mdewakanton Sioux Indians of Minnesota with federal

acknowledgment), ¶ 259 (requiring government to engage in formal tribal "consultation")), they

have not started—much less completed—the regulatory process for securing formal recogni-

tion.[17]

---

[17] And as noted above, any claim based on the exclusion of Plaintiffs from the list of federally
recognized tribes is barred by the statute of limitations.  *See supra* note 13.

It is well established that the decision to recognize Indian tribes is a non-justiciable political question because of the political nature of recognizing a government-to-government relationship. *See, e.g., United States v. Sandoval*, 231 U.S. 28, 46 (1913) ("questions whether, to what extent, and for what time [Indian communities] shall be recognized and dealt with as dependent tribes requiring the guardianship and protection of the United States are to be determined by Congress, and not by the courts") (citations omitted); *United States v. Rickert*, 188 U.S. 432, 445 (1903); *Miami Nation of Indians of Ind., Inc. v. U.S. Dep't of Interior*, 255 F.3d 342, 347 (7th Cir. 2001) ("[T]he action of the federal government in recognizing or failing to recognize a tribe has traditionally been held to be a political one not subject to judicial review." (citation omitted)); *see also Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 216 (D.C. Cir. 2013) (discussing importance of government-to-government relationship in recognition).

> [R]ecognition lies at the heart of the doctrine of "political questions." The doctrine identifies a class of questions that either are not amenable to judicial resolution because the relevant considerations are beyond the courts' capacity to gather and weigh, . . . or have been committed by the Constitution to the exclusive, unreviewable discretion of the executive and/or legislative—the so-called political"—branches of the federal government.

*Miami Nation*, 255 F.3d at 347 (citations omitted); *United States v. Holliday,* 70 U.S. 407, 419 (1865).

This Circuit has held that decisions regarding tribal recognition "should be made in the first instance by the Department of the Interior since Congress has specifically authorized the Executive Branch to prescribe regulations concerning Indian affairs and relations." *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987) (citation omitted). Interior's decisions must then be respected by the judicial branch. *Id.* The judiciary therefore treats a group's absence from Interior's list of federally recognized tribes as dispositive evidence

that the group is not recognized as an Indian tribe. *W. Shoshone Bus. Council v. Babbitt*, 1 F.3d

1052, 1057 (10th Cir. 1993). Judicial review is available only after Interior makes a final deci-

sion under the acknowledgment regulations at 25 C.F.R. Part 83. *Miami Nation*, 255 F.3d at

348. And then the only question subject to judicial review is whether, under the APA, Interior

arbitrarily, capriciously, or unlawfully applied its regulations in recognizing or failing to

recognize the plaintiff as an Indian tribe. *Id.*

The Department of the Interior's regulations at 25 C.F.R. Part 83 allow "any Indian group

that is not currently acknowledged by the Department of the Interior to apply for federal recogni-

tion, thereby qualifying for federal protection, services and benefits." *James*, 824 F.2d at 1136

(citation omitted). "A petition for federal recognition is required as a prerequisite to acknow-

ledgment." *Id.* Pursuant to these regulations, completion of the federal acknowledgment process

is a prerequisite both for petitioners seeking federal acknowledgment in the first instance,

25 C.F.R. §§ 83.5, 83.7, and for petitioners who purport to have been recognized in the past,

such as through treaties or executive orders, *id.* § 83.8; *see also* Procedures for Establishing That

an American Indian Group Exists as an Indian Tribe, 59 Fed. Reg. 9,280, 9,282 (Feb. 25, 1994)

(to be codified at 25 C.F.R. pt. 83) ("The provisions concerning previously acknowledged tribes

have been further revised and set forth in a new, separate section of the regulations . . . Although

these changes have been made, the revisions maintain the essential requirement that to be

acknowledged a petitioner must be tribal in character and demonstrate historic continuity of

tribal existence."); *James*, 824 F.2d at 1136; *Burt Lake Band of Ottawa & Chippewa Indians v.*

*Norton,* 217 F. Supp. 2d 76, 79 (D.D.C. 2002) ("historical recognition . . . does not allow a

[plaintiff] to bypass the [Bureau of Indian Affairs]"), *Muwekma*, 708 F.3d at 218 ("[T]he Part 83

process applies to a petition of a previously recognized tribe that seeks current recognition on

that basis.") (citations omitted).

Because "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted[,]" *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51(1938)), Plaintiffs' claims must be dismissed inasmuch as they demand that Plaintiffs be treated as a federally recognized tribe but do not allege that Plaintiffs have complied with the required procedures.

C.      Plaintiffs Have No Cause of Action Under the 1863 or Appropriations Acts

Section 9 of the 1863 Act provides:

> [T]he Secretary of the Interior is hereby authorized to set apart of the public lands, not otherwise appropriated, eighty acres in severalty to each individual of the before-named bands who exerted himself in rescuing the whites from the late massacre of said Indians.  The land so set apart shall not be subject to any tax, forfeiture, or sale, by process of law, and shall not be aliened or devised, except by the consent of the President of the United States, but shall be an inheritance to said Indians and their heirs forever.

"Statutory intent to create a private remedy 'is determinative.'  Without an intent to create a private remedy, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'"  *Wolfchild v. Redwood County*, 824 F.3d at 769 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)).  Section 9 is an authorization provided by Congress to the Secretary of the Interior, not a provision designed to protect individual plaintiffs.  For that reason, it cannot be read to imply a private right of action (a right that it certain does not *expressly* provide).  *Wolfchild v. Redwood County*, 824 F.3d at 768–70.  The Eighth Circuit's decision in *Redwood County* is consistent with the Federal Circuit's holding that the text of the 1863 Act does not support a claim for damages because it does not "mandate" that money be spent, but only *authorizes* such expenditures.  *Wolfchild v. United States*, 731 F.3d at 1291–92.

20

Similarly, no right of action is available under the Appropriation Acts, because those statutes did not create in the federal government any duty to generate and set aside revenues for Plaintiffs' benefit.  *Wolfchild v. United States*, 731 F.3d at 1288–90.

D.     Plaintiffs' Claims are Barred by Res Judicata

In addition to being subject to dismissal for the fatal infirmities discussed above, Plaintiffs' claims should be dismissed because Plaintiffs improperly seek to relitigate matters they have already lost, in some cases twice.

> Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

*Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citations omitted), *quoted in San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 336 n. 16. (2005); *accord Montana v. United States*, 440 U.S. 147, 152 (1979); *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). Issue preclusion, as the name suggests, applies to bar relitigation of less than whole claims and prevents a plaintiff from relitigating any particular issue that was previously resolved.  *Natural Res. Def. Council v. E.P.A.* ("*NRDC*")*,* 513 F.3d 257, 261 (D.C. Cir. 2008); *SBC Commc'ns, Inc. v. F.C.C.*, 407 F.3d 1223, 1229 (D.C. Cir. 2005); *see also* Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982).  "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Montana*, 440 U.S. at 153–54, *quoted in Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).

"A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation (1) involving the same claims or causes of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" *NRDC*, 513 F.3d at 260 (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)). Claim preclusion prevents litigation of matters that were previously litigated as well as "matters that *should have been* raised in an earlier suit." *Id.* at 261 (*quoting SBC Commc'ns, Inc.*, 407 F.3d at 1229); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985). The plaintiffs in the earlier Federal and Eighth Circuit litigation are the same plaintiffs currently before this court: descendants of the "loyal Mdewakanton" who helped non-Indian settlers during the Sioux uprising in 1862; whose efforts were recognized by Congress in the 1863 and Appropriation Acts; and who were enumerated on census rolls prepared in 1886 and 1889. As explained further below, Plaintiffs' claims and associated legal issues are therefore barred by both claim and issue preclusion.

First, the Plaintiffs in this action were parties to, or in privity with parties to, the earlier litigation. While the present action may involve fewer than the over 20,000 plaintiffs who sued in the Court of Federal Claims, there is no question that the Mdewakanton Sioux as a group is a plaintiff in this action and was a plaintiff in the Federal and Eighth Circuit litigation. *See* ECF No. 1, Compl. ¶¶ 12, 14, 84 (identifying Plaintiff Mdewakanton Sioux Indians of Minnesota as descendants of the Loyal Mdewakanton recognized as eligible for benefits by Congress);[18] *id.*, ECF No. 1, at 345–50, Ex. Q (1886, 1889 censuses); *Wolfchild v. United States*, 559 F.3d 1228,

---

[18] The Complaint in this action also identifies named plaintiffs as being descended from Indians listed in the 1886–89 censuses and eligible for benefits under the 1863 Act and Appropriation Acts. *Id.* ¶¶ 17, 19, 21, 23, 83.

1236 (Fed. Cir. 2009) (plaintiffs claim to be descendants of the 1886 census Indians); 731 F.3d at

1287 (describing plaintiffs as persons claiming descent from the Loyal Mdewakanton eligible for

benefits under the Appropriation Acts); *Wolfchild v. Redwood County*, 824 F.3d at 765–66

(noting that the Eighth Circuit appellants, who claimed descent from the Loyal Mdewakanton,

had previously filed suit in the Federal Circuit).[19]  In short, Plaintiff Mdewakanton Sioux Indians

of Minnesota trace descent from individual Indians eligible for benefits under the 1863 Act and

the Appropriation Acts—the individuals identified on the 1886 and 1889 census rolls.  Thus,

Plaintiffs in this case as a group are defined by the same criteria as the plaintiffs in the Federal

and Eighth Circuit litigation.  Therefore, all three groups of plaintiffs are essentially the same.

But even if some of the named Plaintiffs in this action were not parties to the earlier

Federal Circuit or Eighth Circuit litigation, a nonparty may be bound by a prior judgment if he or

she was "adequately represented" by a party to the earlier action having the "same interests."

*Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  That test is met here, where numerous plaintiffs

asserted claims based on their descent from Indians identified on the 1886 and 1889 rolls—just

as here—and actively litigated those claims in the earlier lawsuits.  Moreover, "adequate repre-

sentation" will be found where the party and nonparty were in a fiduciary relationship.  *Sea-Land

Servs. v. Gaudet*, 414 U.S. 573, 593–94 (1974).  Thus, union members are in privity with their

---

[19] In their opposition to the motions to dismiss in *Wolfchild v. Redwood County*, Plaintiffs
affirmed that they trace their roots back to the Sioux Indians identified in the 1886 censuses.  *See*
0:14-cv-01597-MJD-FLN, ECF No. 185, at 7 n.7 (attached as Exhibit 1 to accompanying
Request for Judicial Notice).  Plaintiffs note that, in response to a Court of Federal Claims order,
the Department of the Interior prepared a roll of such Indians.  *Id.*  That roll has been published,
Preliminary Plan for Distribution of Judgment Funds to the Loyal Mdewakantons, 77 Fed. Reg.
59,963 (Oct. 1, 2012); the roll adopts the 1886 McLeod and 1889 Henton censuses, *id.* at 59,967.
The district court in *Redwood County* also stressed the identity of the plaintiffs in the case before
it and in the protracted litigation in the Federal Circuit.  *Wolfchild v. Redwood County*, 112 F.
Supp. 3d 866, 870, 874–75 (D. Minn. 2015).

unions.  *Brewer v. District of Columbia*, 105 F. Supp. 3d 74, 90 (D.D.C. 2015).  And privity is

established where a tribal group is suing to vindicate claims of its members.  *See Yankton Sioux*

*Tribe v. U.S. Dep't of Health and Human Servs.*, 533 F.3d 634, 640–41 (8th Cir. 2008) (indivi-

dual tribal member in privity with tribe).  Although the Mdewakanton Sioux Indians of

Minnesota as such are not a federally recognized tribe, they nevertheless constitute a group that

purports to represent its members.  (*See* ECF No. 1, Compl. ¶¶ 236, 237, 242, 251, 259 (alleging

that the Mdewakanton Sioux Indians of Minnesota should have been consulted on the matters

addressed in the complaint).)

Second, the claims and issues raised in this action were previously addressed by the

courts in the Federal and Eighth Circuits, which ruled adversely to the same plaintiffs who now

seek to relitigate those matters here.  Whether two claims are the same "turns on whether they

share the same nucleus of facts."  *NRDC*, 513 F.3d at 261 (quotations and citation omitted).  The

claims at issue in *NRDC* met this requirement because the plaintiff challenged a 2007 agency

decision on the same grounds it had challenged a prior 2004 agency decision.  The court held

that "[w]hile [the plaintiff] challenges the 2007 exemption, its claim in fact remains the same:

that the framework adopted in 2004—and used to calculate the 2007 exemption—is inconsistent

with [the] law."  *Id.* at 260.  Thus, despite the fact that the plaintiff purported to challenge a new

agency decision, the 2007 exemption, its claims were in fact directed as the same agency action

it had already challenged, the 2004 framework.  The claims thus shared the same nucleus of

facts, leading the Court to conclude that the claims were "the same claims" for the purposes of

res judicata.  *Id.*

Here, claims raised by Plaintiffs in the current lawsuit are even more closely related to

the claims they raised earlier in the Federal and Eighth Circuits than were the series of claims

addressed in *NRDC*.  Here and in the prior litigation, Plaintiff Mdewakanton Sioux Indians of

Minnesota invoke the 1863 and 1888–1890 Acts to vindicate claims for both revenues and land

they assert were wrongly given to others.  As discussed in Section I.B, above, the Federal and

Eighth Circuits have already rejected claims that those acts provide Plaintiffs with any avenue of

relief.  Moreover, the Federal Circuit and Minnesota district court have held that Plaintiffs'

claims are time-barred.  Not only are those decisions correct as a matter of law, but they are

binding on the Plaintiffs to this action and cannot be relitigated.

>    E.    In the Absence of a Valid and Exhausted APA Claim That Is Not Time–Barred,
>          Plaintiffs' Claim for Land Beneficially Owned by a Non-party Tribe Must Be
>          Dismissed for Failure to Join a Necessary Party

Plaintiffs seek recovery of land owned by other parties.  (*See* ECF No. 1, Compl. ¶ 259 &

Prayer for Relief ¶ 3.)  As discussed above, such a claim has already been rejected as a matter of

law and declared time-barred.  Beyond that, Plaintiffs cannot pursue that claim in this Court

because they cannot join an absent party whose presence in this case is necessary.  The claim

must therefore be dismissed under Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure.

Here, Plaintiffs apparently assert a claim to 12 square miles of land authorized by the

1863 Act and to 30 acres held in trust for the Prairie Island Indian Community.  (ECF No. 1,

Compl. ¶¶  238, 252, 259 (seeking 12 parcels authorized by the 1863 Act); *id*. ¶¶ 90, 91, 104

(specifically identifying Prairie Island Indian Community)).  Plaintiffs assert that because the

Prairie Island Indian Community's IRA corporate charter has been revoked, Plaintiffs are by

rights the current owners of the beneficial interest in the 30 acres at Prairie Island that had been

purchased with funds from the Appropriations Acts.  (ECF No. 1, Compl. ¶¶ 115, 117.)

Plaintiffs seek declaratory and injunctive relief that would make them the beneficial interest

holders of Prairie Island lands.  (*Id*. ¶¶ 238, 252, 258, 259.)  Therefore, the Prairie Island Indian

Community is a "required party" under Rule 19, because it has an interest in the lands it possesses and would be prejudiced by a decision rendered in its absence that called its possessory rights into question.  The Community is also one that cannot be joined under settled principles of tribal immunity.  "Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."  *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) (citation omitted); *accord Vann v. Kempthorne*, 534 F.3d 741, 746 (D.C. Cir. 2008).  Plaintiffs cannot pursue their claim to the land they seek in the absence of the Prairie Island Indian Community; because that party cannot be joined, Plaintiffs' claim to the land in question must be dismissed.

III.   <u>CONCLUSION</u>

Plaintiffs seek to relitigate claims they already lost, that are time-barred, and that lack merit.  The Court should therefore dismiss their Complaint.

Dated:  February 21, 2017                              Respectfully Submitted,

                                                       JEFFREY H. WOOD
                                                       Acting Assistant Attorney General


                                                         /s/ *David B. Glazer*
                                                       DAVID B. GLAZER (D.C. 400966)
                                                       Senior Counsel
                                                       U.S. Department of Justice
                                                       Environment & Natural Resources Division
                                                       Natural Resources Section
                                                       301 Howard Street, Suite 1050
                                                       San Francisco, California  94105
                                                       Phone:  (415) 744–6491
                                                       Fax:     (415) 744-6476
                                                       E-mail:  david.glazer@usdoj.gov


Of Counsel:
James W. Porter
Office of the Solicitor
U.S. Department of the Interior

26

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 21, 2017, I filed the foregoing electronically through the Court's CM/ECF system, which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.


Dated:  February 21, 2017                    /s/*<u>David B. Glazer</u>*
                                                                David B. Glazer

27