JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

DAVID B. GLAZER (D.C. 400966)
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105
TEL:   (415) 744–6491
FAX:   (415) 744-6476
E-mail:  david.glazer@usdoj.gov
Attorneys for Federal Defendants

Attorneys for Federal Defendants


## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| MDEWAKANTON SIOUX INDIANS OF MINNESOTA, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | Case No. 1:16-cv-02323-RC |
| v. | ) ) ) | |
| ZINKE, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR

## MOTION TO DISMISS

TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................ 1

   A.   Standard of Review ....................................................................................... 1

   B.   Scope of Review ............................................................................................ 2

   C.   Factual Background ....................................................................................... 2

II.     ARGUMENT ..................................................................................................... 7

   A.   Plaintiffs' Claims Are Time-Barred ............................................................. 7

      1.   28 U.S.C. § 2401(a) is Jurisdictional ..................................................... 7

      2.   The Indian Non-Intercourse Act is Not Available to Plaintiffs and 28 U.S.C. ..............
           § 2415(c) Does Not Apply ....................................................................... 9

      3.   Plaintiffs' Claims Accrued Years Ago ................................................... 10

   B.   Plaintiffs Have No APA Claims ................................................................... 11

      1.   Plaintiffs Have No Claim Under APA § 706(1) ...................................... 11

      2.   Plaintiffs Have No Claim Under APA § 706(2) ...................................... 13

      3.   Plaintiffs Have No Claims Under the Indian Reorganization Act, the 1863 Act, .........
           and 1888–1890 Appropriation Acts ........................................................ 13

   C.   Plaintiffs' Claims are Barred by Claim- or Issue-Preclusion ...................... 14

   D.   Plaintiffs' Land Claims Must be Dismissed Under Fed. R. Civ. P. 19 ....................... 17

III.    CONCLUSION .................................................................................................. 18

<u>TABLE OF AUTHORIES</u>

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980) ............................................................................ 16

*Califano v. Sanders*,
    430 U.S. 99 (1977) ............................................................................ 14

*Canonsburg Gen. Hosp. v. Sebelius*,
    989 F. Supp. 2d 8 (D.D.C. 2013) ..................................................... 15

*County of Oneida v. Oneida Indian Nation*,
    470 U.S. 226 (1985) .......................................................................... 10

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ........................................................... 2

*Fla. Power & Light Co. v. Lorion* ,
    470 U.S. 729 (1985) ............................................................................ 2

*Gallucci v. Chao*,
    374 F. Supp. 2d 121 (D.D.C. 2005) ................................................. 14

*Gold Reserve, Inc. v. Bolivarian Republic of Venez.*,
    146 F. Supp. 3d 112 (D.D.C. 2015) ................................................... 9

*Grimes v. District of Columbia*,
    794 F.3d 83 (D.C. Cir. 2015) ........................................................... 11

*Hayes v. District of Columbia*,
    923 F. Supp. 2d 44 (D.D.C. 2013) ..................................................... 9

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ........................................................... 3

*In re Navy Chaplaincy*, No. 1:07-mc-269 (GK),
    2016 U.S. Dist. LEXIS 15294 (D.D.C. Feb. 9, 2016) ....................... 3

*James v. U.S. Dep't of Health & Human Servs.*,
    824 F.2d 1132 (D.C. Cir. 1987) ................................................. 11, 12

*John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130 (2008) ............................................................................ 8

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Ashcroft*,
    360 F. Supp. 2d 64 (D.D.C. 2004) ................................................... 14

*Mackinac Tribe v. Jewell*,
　829 F.3d 754 (D.C. Cir. 2016) ...................................................................... 11, 12

*Martin v. DOJ*,
　488 F.3d 446 (D.C. Cir. 2007) ............................................................................ 15

*Menominee Tribe of Indians v. United States*,
　726 F.2d 718 (Fed. Cir. 1984) ............................................................................ 11

*Muwekma Ohlone Tribe v. Salazar*,
　708 F.3d 209 (D.C. Cir. 2013) ...................................................................... 11, 12

*Nat'l Ass'n of Home Builders v. EPA*,
　786 F.3d 34 (D.C. Cir. 2015) .............................................................................. 15

*Norton v. S. Utah Wilderness All.*,
　542 U.S. 55 (2004) ........................................................................................ 11, 14

*Oneida Indian Nation v. County of Oneida*,
　414 U.S. 661 (1974) ........................................................................................... 10

*Otherson v. Dep't of Justice*,
　711 F.2d 267 (D.C. Cir. 1983) ............................................................................ 15

*P&V Enters. v. U.S. Army Corps of Eng'rs*,
　516 F.3d 1021 (D.C. Cir. 2008) ............................................................................ 8

*Pinson v. U.S. DOJ*,
　61 F. Supp. 3d 164 (D.D.C. 2015) ...................................................................... 11

*Snoqualmie Indian Tribe v. FERC*,
　545 F.3d 1207 (9th Cir. 2008) ............................................................................ 12

*Swanson Grp. Mfg. L.L.C. v. Jewell*,
　195 F. Supp. 3d 66 (D.D.C. 2016) ...................................................................... 15

*Taylor v. Sturgell*,
　553 U.S. 880 (2008) ........................................................................................... 16

*United States v. Kwai Fun Wong*,
　135 S. Ct. 1625 (2015) .......................................................................................... 8

*W. Shoshone Bus. Council v. Babbitt*,
　1 F.3d 1052 (10th Cir. 1993) ........................................................................... 4, 12

*Wannall v. Honeywell, Inc.*,
　775 F.3d 425 (D.C. Cir. 2014) .............................................................................. 9

*Wolfchild v. Redwood County*,
　824 F.3d 761 (8th Cir. 2016) .................................................................. 10, 15, 18

*Wolfchild v. United States*,
    77 Fed. Cl. 22 (2007) ................................................................... 18

*Wolfchild v. United States*,
    101 Fed. Cl. 54 (2011) ................................................................... 9

*Wolfchild v. United States*,
    559 F.3d 1228 (Fed. Cir. 2009) ..................................................... 4

*Wolfchild v. United States*,
    731 F.3d 1280 (Fed. Cir. 2013) ................................................ 4, 9, 14, 15

*Yamaha Corp. of Am. v. United States*,
    961 F.2d 245 (D.C. Cir. 1992) ..................................................... 15

**Statutes**

Act of Feb. 16, 1863, ch. 37, § 9, 12 Stat. 652, 654 ............................... 4, 16

Act of Mar. 3, 1863, ch. 119, § 1, 12 Stat. 819 ..................................... 4, 16

Act of Feb. 9, 1865, ch. 29, 13 Stat. 427 ............................................ 4

Act of May 15, 1886, ch. 333, 24 Stat. 29, 39–40 ................................... 4

Act of June 29, 1888, ch. 503, 25 Stat. 217, 228–29 ............................... 4

Act of Mar. 2, 1889, ch. 412, 25 Stat. 980, 992–93 ................................ 4

Act of Aug. 19, 1890, ch. 807, 26 Stat. 336, 349 ................................... 4

Act of June 18, 1934, ch. 576, 48 Stat. 988 ......................................... 6

Act of Dec. 19, 1980, Pub. L. No. 96–557, 94 Stat. 3262 .......................... 5

Act of Oct. 9, 1996, Pub. L. No. 104-261, § 1, 110 Stat. 3176 .................... 6

5 U.S.C. § 701 (2012) ................................................................. 1, 2

5 U.S.C. § 702 (2012) ................................................................. 8

5 U.S.C. § 706(1) ..................................................................... 11

5 U.S.C. § 706(2) ..................................................................... 13

25 U.S.C. § 177 (2012) ................................................................ 9

25 U.S.C. § 5124 (2012) ............................................................... 6

25 U.S.C. § 5129 (2012) ............................................................... 3

28 U.S.C. § 1346(b) (2012) ............................................................ 7, 8

28 U.S.C. § 1491(a) (2012) ............................................................ 7

28 U.S.C. § 2401(a) (2012) ............................................................ 7, 8, 10

28 U.S.C. § 2401(b) (2012) ............................................................ 7, 8

28 U.S.C. § 2415(c) (2012) ............................................................ 9

28 U.S.C. § 2501 (2012) ............................................................... 7, 8

44 U.S.C. § 1507 (2012) ................................................................................................ 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 18

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 18

Fed. R. Civ. P. 19(a)(1) ................................................................................................. 17

Fed. R. Civ. P. 19(b) ..................................................................................................... 17

**Regulatory Materials**

25 C.F.R. §§ 2.6-2.8(b) ................................................................................................. 12

25 C.F.R. § 2.8 .............................................................................................................. 12

25 C.F.R. pt. 83 ............................................................................................................. 12

44 Fed. Reg. 7235 (Feb. 6, 1979) ........................................................................... 5, 6, 11

47 Fed. Reg. 34,050 (Aug. 5, 1982) ............................................................................... 6

**Other**

Restatement (Second) of Judgments § 29 (1982) ........................................................ 16

Local Rule 7 ................................................................................................................. 2, 8

Federal Defendants Ryan Zinke, Secretary of the Interior, and U.S. Department of the

Interior submit this reply memorandum in support of their Motion to Dismiss (ECF No. 10).

I.   BACKGROUND

Plaintiffs' memorandum in opposition to the Federal Defendants' motion to dismiss (ECF

No. 13 ("Pls.' Opp.")) fails to rebut any of Federal Defendants' arguments in support of dismis-

sal.  Plaintiffs fail to identify a final agency action amenable to review under the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701–706; Plaintiffs failed to exhaust required administra-

tive remedies available to compel agency action; the harm alleged by Plaintiffs occurred decades

ago, and Plaintiffs' claims are therefore untimely; Plaintiffs are not an Indian Tribe, so they can-

not invoke the Indian Non-Intercourse Act; Plaintiffs' claims to land held for the Prairie Island

Indian Community ("Community") should be dismissed under Rule 19 of the Federal Rules of

Civil Procedure because the Community is a Rule 19 "required party" but cannot be joined

because immune from suit; and all of the bases on which Plaintiffs predicate their present suit

have been fully litigated and decided adversely to Plaintiffs, precluding them from advancing

those arguments here.

A.   Standard of Review

Federal Defendants' do not dispute Plaintiffs' assertion (ECF No. 13, Pls. Mem. in Opp.

to Fed. Defs.' Mot. to Dismiss ("Pls.' Opp.") at 20–21) that this Court reviews purely legal ques-

tions *de novo*.  On the other hand, Plaintiffs recite various principles of statutory construction

that are irrelevant to this case—for instance, that a congressional enactment must evince a clear

intent to terminate the federally recognized status of an Indian tribe to be effective or that legis-

lation diminishing reservation boundaries must clearly indicate an intent to do so.  (*See* Pls.'

Opp. at 23–24.)  Those principles are not at play in this case, because Plaintiff Mdewakanton

Sioux Indians of Minnesota is not a federally recognized tribe and does not possess a reservation

1

whose boundaries the Department of the Interior could limit or alter.

B.     Scope of Review

Plaintiffs argue that Federal Defendants have failed to submit an administrative record in this case, as required for review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and Local Rule 7(n).  Further, Plaintiffs claim to have themselves submitted an "administrative record," apparently consisting of exhibits attached to their complaint.  (*See* Pls.' Opp. at 2 n.6.)  But leaving aside the obvious point that the administrative record is not *theirs* to submit,[1] they point to no *agency action* that such a record was supposedly developed to support. Federal Defendants argued in their motion to dismiss, and argue further below, that Plaintiffs' claims are legally deficient for a variety of reasons, including that they do *not* challenge final agency action and that, therefore, no record need be submitted.  (*See* ECF No. 10, Fed. Defs.' Mot. to Dismiss and Mem. of Law ("Fed. Defs.' Mem.") at 1 n.1, 14–16.)  Federal Defendants certainly have not "concealed" any administrative record, as Plaintiffs curiously suggest.  (*See* Pls.' Opp. at 21–22, 37.)

C.     Factual Background

On a motion to dismiss, the Court may examine factual matters set forth in exhibits to the Plaintiffs' Complaint.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Here, Plaintiffs' own exhibits refute the factual allegations Plaintiffs advance in their opposition memorandum.  And where, as here (Fed. Defs.' Mem. at 11–21), the motion also

---

[1] "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record *the agency presents* to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) (emphasis added), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

challenges Plaintiffs' invocation of the Court's subject matter jurisdiction,[2] the Court may resolve disputed issues of fact in order to determine its jurisdiction.  *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted).

Although Plaintiffs insist that they are a federally "acknowledged" tribe, the documentation Plaintiffs submit to the Court demonstrates the contrary.  For instance, Plaintiffs' Exhibit C (ECF No. 1-1, at 258) indicates that the Mdewakanton Sioux Indians of Minnesota, for whose benefit land was acquired pursuant to acts of Congress, had *severed* tribal relations and therefore could not be considered a "tribe."  The Indian Reorganization Act of 1934 included a new definition of "tribe":  "the Indians residing on one reservation."  Indian Reorganization Act § 19, now codified at 25 U.S.C. § 5129.  Thus, while there were Mdewakanton Sioux Indians residing in various locations in Minnesota, it was only those actually residing on the acquired land in 1934 who were eligible to organize under the Indian Reorganization Act.

Documents submitted by Plaintiffs with their complaint establish that the Secretary did not consider the Mdewakanton Sioux in Minnesota to be a historic tribe.  (*See* Pls.' Ex. D, ECF No. 1-1, at 260–61 (Memorandum of Assistant Solicitor Westwood); Pls.' Ex. G, ECF No. 1-1, at 281–82 (Memorandum of Solicitor, Apr. 15, 1938).)  Moreover, Plaintiffs assert that they are the descendants of Indians listed on the 1886 and 1889 census rolls (see Fed. Defs.' Mem. at 22–23 & n.19), which record those *individual* Mdewakanton Sioux Indians for whom Congress

---

[2] Federal Defendants argue that Plaintiffs have not brought timely claims under the applicable statute of limitations and that they have not pled a valid waiver of sovereign immunity under the APA.  Both those failures are jurisdictional defects.  *See United States v. Mottaz*, 476 U.S. 834, 841 (1986) (conditions of waiver of sovereign immunity are jurisdictional requirements); *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008) (28 U.S.C. § 2401(a) is a jurisdictional statute of limitations); *In re Navy Chaplaincy*, No. 1:07-mc-269 (GK), 2016 U.S. Dist. LEXIS 15294, at *8 (D.D.C. Feb. 9, 2016) (D.C. Cir. has not yet revisited that rule following *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) (holding that (Footnote continued)

made provision precisely because they *had* severed their tribal relations.  *See Wolfchild v. United States*, 731 F.3d 1280, 1294 (Fed. Cir. 2013); *Wolfchild v. United States*, 559 F.3d 1228, 1248 (Fed. Cir. 2009).

There is no support for Plaintiffs' repeated assertions that the United States has "recognized" or "acknowledged" the Mdewakanton Sioux Indians of Minnesota as a federally recognized tribe.[3]  As Plaintiffs concede, that group has never appeared on the list of federally recognized tribes since a list was first published in 1979.  (See Fed. Defs.' Mem. at 12 n.13.)  A group's absence from the list of federally recognized tribes is dispositive evidence that the group is not recognized as an Indian tribe.  *W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1057 (10th Cir. 1993).  And while it is true that Congress never enacted legislation "terminating" the Mdewakanton Sioux in Minnesota (*see* Pls.' Opp. at 6), Congress specifically stated that the "loyal" Sioux who remained in Minnesota had severed their tribal relations, and Congress enacted legislation in 1863, 1865, and 1888 through 1890 to confer benefits on individual Sioux Indians.  *See* Act of Feb. 16, 1863, ch. 37, § 9, 12 Stat. 652, 654; Act of Mar. 3, 1863, ch. 119, § 1, 12 Stat. 819 (together, "the 1863 Acts"); Act of Feb. 9, 1865, ch. 29, 13 Stat. 427 ("1865 Act"); Act of May 15, 1886, ch. 333, 24 Stat. 29, 39–40 ("1886 Act"); Act of June 29, 1888, ch. 503, 25 Stat. 217, 228–29 ("1888 Act"); Act of Mar. 2, 1889, ch. 412, 25 Stat. 980, 992–93 ("1889 Act"); Act of Aug. 19, 1890, ch. 807, 26 Stat. 336, 349 ("1890 Act") (collectively, the 1888, 1889, and 1890 Acts are referred to as "the Appropriations Acts").  Later, the 1980 Act

---

the Federal Tort Claims Act statute of limitations, 24 U.S.C. § 2401(b), is not jurisdictional)).

[3] Where it suits their arguments, Plaintiffs themselves maintain that the federal government does *not* acknowledge them, asserting that "[o]nce acknowledged, the MSIM may exercise rights under the 1934 IRA . . ." (Pls.' Opp. at 30) and that "the Department refused in 2016 to concede MSIM is an acknowledged tribe" (*id*. at 31).

that transferred the beneficial interest in lands acquired under the Appropriation Acts to the three

Sioux Indian Communities (Lower Sioux Indian Community, Prairie Island Indian Community,

and the Shakopee Mdewakanton Indian Community) referred to the original beneficiaries simply

as "certain Mdewakanton Sioux Indians."  Act of Dec. 19, 1980, Pub. L. No. 96–557, 94 Stat.

3262 ("1980 Act").  None of those congressional actions, which were undertaken because the

loyal Sioux had severed tribal relations, can be construed as conferring federal recognition on

any group of individual Indians or any Indian tribe, or as maintaining government-to-government

relations with any such group.

By contrast, the three Sioux Indian Communities for whom the United States holds in

trust land that was acquired under Appropriation Acts and the 1980 Act have been included on

the list of federally recognized tribes since the first such list was published.  *See* Indian Tribal

Entities that have a Government-to-Government Relationship with the United States, 44 Fed.

Reg. 7235, 7236 (Feb. 6, 1979).  Plaintiffs attempt to make much of the various names used to

refer to the Prairie Island Indian Community, claiming that Congress in 1980 conferred an

interest in lands on the chartered Prairie Island Indian Community corporation,[4] rather than on

the tribe itself.  (*See* Pls.' Opp. at 8–11.)  There is no merit to that suggestion.  The "Prairie

Island Indian Community" is referred to as such on the cover page of its Constitution.  (*See* Pls.'

Ex. I, ECF No. 1-1, at 305).  The plain language of the 1980 Act underscores that Congress was

transferring beneficial interest in the acquired lands to the three Sioux Communities, not to any

corporation, and those lands were "declared to be a part of the reservations of the respective

---

[4] In drafting the Indian Reorganization Act, Congress sought to foster, among other things, the
economic development of Indian Tribes.  Included in the Act were provisions allowing for the
chartering of Indian corporations, which Congress believed would promote economic develop-
ment and self-reliance.  *See* 78 Cong. Rec. 11731 (1934).

Indian Communities for which they are held in trust by the United States government." *Id.* § 2, 94 Stat. 3262.  Under the 1980 Act, land was transferred to the "Prairie Island Indian Community of Minnesota." *Id.* § 1; *see also* Eastern States; Transfer of Lands To Be Held by the United States in Trust for Certain Communities of the Mdewakanton Sioux in Minnesota, 47 Fed. Reg. 34050 (Aug. 5, 1982) ("Lands transferred and declared to be a part of the reservation of the Prairie Island Indian Community").  Plaintiffs thus have no basis on which to insist that such a transfer was made to the tribal corporation and not the tribe.

Even assuming that the Prairie Island tribal corporation was the entity that received the relevant interest in land, the conclusion Plaintiffs would have the Court draw certainly does not follow.  Under Section 17 of the Indian Reorganization Act, now codified at 25 U.S.C. § 5124,[5] a corporate charter may be issued to an Indian tribe, which in this case made the Prairie Island Indian Community the sole owner and shareholder of the Corporation.  Under basic principles of corporate law, when a corporation is dissolved, all of its assets remaining after all debts are settled are distributed to the shareholders of the corporation.[6]  Thus, even if the beneficial interest in land was originally transferred to the Prairie Island Indian Community Corporation, upon dissolution of the Corporation in 1996, *see* Act of Oct. 9, 1996, Pub. L. No. 104-261, § 1, 110 Stat. 3176, the interest would have reverted to the Prairie Island Indian Community as the shareholder of the Corporation.  There is no circumstance under which these Plaintiffs would

---

[5] Section 17 was included in the Indian Reorganization Act as originally enacted in substantially the same form. *See* Act of June 18, 1934, ch. 576, 48 Stat. 988.

[6] *See* Internal Revenue Service Manual  4.11.7.2  (12-01-2004), Overview for Corporate Liquidations/ Dissolutions:  "A corporate liquidation should be considered at two levels, the shareholder level and the corporate level.  On the shareholder level, a complete liquidation can be thought of as a sale of all outstanding corporate stock held by the shareholders in exchange for all of the assets in that corporation." *Id.*, *available at* https://www.irs.gov/irm/part4/irm_04- (Footnote continued)

acquire the Prairie Island assets after the Prairie Island Corporation's charter was terminated.

II.     ARGUMENT

    A.     Plaintiffs' Claims Are Time-Barred

    Plaintiffs purport to bring an action for review under the APA of Federal Defendants' failure to acknowledge the alleged federally recognized status of Plaintiff Mdewakanton Sioux Indians of Minnesota, and to consult with Plaintiff on that basis, and for the failure to provide Plaintiffs an interest in certain lands to which Plaintiffs claim entitlement, all in contravention of the 1863 Act, Appropriations Acts, Act of 1980, and the Indian Reorganization Act.  (Compl. ¶¶ 231–59.)  As explained in Federal Defendants' opening memorandum (Fed. Defs.' Mem. at 11–13), all those claims accrued years ago and are therefore time-barred.

    1.     28 U.S.C. § 2401(a) is Jurisdictional

    The current law in the D.C. Circuit is that the statute of limitations provided in 28 U.S.C. § 2401(a) is a jurisdictional predicate for suit.  (*See supra* note 2.)  Plaintiffs argue otherwise (*see* Pls.' Opp. at 24–26), but this Court is bound by Circuit law.  Beyond that, Plaintiffs' argument that the statute is not jurisdictional is not persuasive.  Plaintiffs draw a contrast between APA claims, on the one hand, and claims under the Tucker Act, 28 U.S.C. § 1491(a), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), on the other hand.  They then insist that because the latter two statutes concern claims for money damages, while the former allows for declaratory and injunctive relief, the statute of limitations governing APA claims, 28 U.S.C. § 2401(a), must be a non-jurisdictional statute, in contrast to the statutes of limitation for Tucker Act claims, 28 U.S.C. § 2501, and FTCA claims, 28 U.S.C. § 2401(b).  (*See* Pls.' Opp. at 25–26.)  But that distinction simply does not hold up.  On the contrary, the Supreme Court has ruled

011-007.html (last viewed April 3, 2017).

that 28 U.S.C. § 2501 is jurisdictional, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134–39 (2008), while 28 U.S.C. § 2401(b) is not, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015).  A much more meaningful distinction is that FTCA claims allow for liability against the United States only where the government would be liable *if it were a private party*, *see* 28 U.S.C. § 1346(b)(1), while the APA contrastingly provides for claims against the government for *agency action* taken in the government's capacity as a sovereign, *see* 5 U.S.C. § 702.  That is why the limitations period for APA claims should be considered a jurisdictional condition of the government's waiver of sovereign immunity, as the D.C. Circuit has held, *see, e.g.*, *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008), while the statute of limitations for FTCA claims is more akin to a limitations period for claims against a private actor.

But even if the Court were to hold that 28 U.S.C. § 2401(a) is not jurisdictional, such a ruling would not benefit Plaintiffs.  Plaintiffs have made no argument that the limitations period should be equitably tolled, *see Kwai Fun Wong*, 135 S. Ct. at 1638, so it does not matter whether the statute is considered jurisdictional or not.  And because Plaintiffs have presented no argument that the statute should be equitably tolled, they have waived that argument.[7]  Under Local Rule 7, "the Court may treat [a] motion as conceded" if a memorandum of points and authorities in opposition "is not filed within the prescribed time[.]"  LCvR 7(b).  That rule "is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."  *Wannall v.*

---

[7] Federal Defendants properly raised the statute of limitations defense in their motion to dismiss, so that even if the statute were not considered a jurisdictional bar to suit, but rather a non-jurisdictional affirmative defense under Rule 8(c)(1), it remains the proper basis for a motion to dismiss under Rule 12(b)(6).  (*See* Fed. Defs.' Mem. at 11 n.10.)

*Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) (citations omitted); *see Hayes v. District of Columbia*, 923 F. Supp. 2d 44, 49 (D.D.C. 2013) (granting defendant's motion for summary judgment on two counts of complaint because "the plaintiff failed to respond at all to the defendant's arguments regarding [those] claims"); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 126–27 (D.D.C. 2015), *appeal docketed*, No. 15-7158 (D.C. Circuit Dec. 30, 2015) (argument made only perfunctorily is deemed waived).

> 2.   The Indian Non-Intercourse Act Does Not Preserve Plaintiffs' Claims from Being Time-Barred Because it Does Not Apply to Plaintiffs' Situation

Plaintiffs assert that their claims (or at least some of them) arise under the Indian Non-Intercourse Act and therefore are not time-barred.  (*See* Pls.' Opp. at 26–30.)  The Indian Non-Intercourse Act provides that "[n]o purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution."  25 U.S.C. § 177.  But that statute does not give rise to a cause of action independent from Plaintiffs' (non-meritorious and time-barred) claims under the 1863 Act or Appropriations Acts, because the Non-Intercourse Act presupposes a *pre-existing* property right.  *Wolfchild v. United States*, 731 F.3d at 1294.  Moreover, Plaintiffs do not constitute a "tribe" within the meaning of the Non-Intercourse Act.  *Wolfchild v. United States*, 101 Fed. Cl. 54, 65–69, 76 (2011), *aff'd*, 731 F.3d at 1294.  Because the Non-Intercourse Act does not apply in this case, there is no merit to Plaintiffs' suggestion that the statute of limitations governing claims brought *by* the United States *on behalf of* recognized Indian tribes, 28 U.S.C. 2415(c), controls in this case, brought by Plaintiffs *against* the United States.

9

Similarly, Plaintiffs invoke the Supreme Court's *Oneida* decision and its progeny (*see* Pls.' Opp. at 26, 28),[8] again arguing that those precedents render 28 U.S.C. § 2401(a) inapplicable.  But that line of cases does not apply because Plaintiffs are not pursuing claims to aboriginal territory against third parties, but rather for alleged property rights granted by statute, *Wolfchild v. Redwood County*, 824 F.3d 761, 767–68 (8th Cir. 2016), and all Plaintiffs' claims for such property against the United States are expressly limited by the applicable statutes of limitation that bar claims against the United States brought outside the statutorily prescribed limitations period.

In short, the limitations period of 28 U.S.C. § 2401(a) governs in this case and bars Plaintiffs' claims.

### 3.    Plaintiffs' Claims Accrued Years Ago

Plaintiffs argue that the statute of limitations not only has not run, but did not even commence running until December 2016, when Plaintiffs assert they were first on notice of a "de facto" termination when the Department allegedly declined their request for consultation.[9]  (*See* Pls.' Opp. at 31.)  Federal Defendants agree with Plaintiffs that there has been no congressional "termination," but only because the Mdewakanton Sioux in Minnesota after 1862 have never been a tribal entity that *could* be terminated.  Inasmuch as Plaintiffs complain that they are not federally recognized, they have never been, and they have been on notice of that fact since 1979 when the first list of federally recognized tribes was published.  Indian Tribal Entities that have a

---

[8] *See Oneida Indian Nation v. Cty. of Oneida*, 414 U.S. 661 (1974); *Cty. of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985).

[9] Plaintiffs go on to argue that only Congress can terminate a tribe (Pls.' Opp. at 31), so it is unclear why December 2016 has any significance.  Under Plaintiffs' theory, the statute of limitations has not even begun to run.

Government-to-Government Relationship with the United States, 44 Fed. Reg. at 7236. As

argued in Federal Defendants' opening memorandum (Fed. Defs.' Mem. at 12 n.13), any claim

based the federal government's non-recognition of Plaintiffs has long been time-barred.[10]

*Menominee Tribe of Indians v. United States*, 726 F.2d 718, 720–22 (Fed. Cir. 1984) (inquiry

notice is sufficient barring active concealment or inherently unknowable facts); 44 U.S.C. § 1507

(Federal Register publication constitutes notice).

  B. <u>Plaintiffs Have No APA Claims</u>

  Plaintiffs attempt to cast their claims as APA claims,[11] but they fail to identify either final

agency action that they challenge or agency action that the government was required by law to

take but did not. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62–65 (2004).

  1. <u>Plaintiffs Have No Claim Under APA § 706(1)</u>

  Plaintiffs argue that the Federal Defendants have "unlawfully withheld" consultation and

that they therefore have pled a proper claim under APA § 706(1), 5 U.S.C. § 706(1). Plaintiffs

simply have no claim that the federal government has "unlawfully withheld" consultation. The

judiciary treats a group's absence from the Department's list of federally recognized tribes as

dispositive evidence that the group is not recognized as an Indian tribe.[12] *W. Shoshone Bus.*

---

[10] Curiously, Plaintiffs take conflicting positions, at the same time claiming both that they are
and have not been federally acknowledged. (*See* Pls.' Opp. at 32.)

[11] Of course, that characterization conflicts with Plaintiffs' argument that they bring claims under
the Indian Non-Intercourse Act, as discussed in the previous Section of this Memorandum.

[12] It makes little sense for Plaintiffs to assert that the federal government has never "terminated"
the supposed status of the Mdewakanton Sioux as a federally recognized tribe (*see* Pls.' Opp. at
7–8, 31–32), when the reality is that the federal government has never recognized that group as
an Indian tribe. In the absence of federal recognition, or an administratively ripe claim seeking
such status, there can be no "judicial determination" (*id.*) that Plaintiffs are, in fact, a federally
recognized tribe. *See Mackinac Tribe v. Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016); *Muwekma
Ohlone Tribe v. Salazar*, 708 F.3d 209, 218–19 (D.C. Cir. 2013); *James v. U.S. Dep't of Health*
(Footnote continued)

*Council*, 1 F.3d at 1057.  Because Plaintiffs are not a federally recognized tribe, they have no

"right" to consultation.  *See* Department of the Interior, Departmental Manual, 512 DM 4.3,

*available at* http://elips.doi.gov/ELIPS/DocView.aspx?id=4220&dbid=0 (last visited April 4,

2017) (providing consultation procedures with *federally recognized tribes*); *see also Snoqualmie*

*Indian Tribe v. FERC*, 545 F.3d 1207, 1216 (9th Cir. 2008) (consultation not required with group

that is not a federally recognized tribe at the time).  And if Plaintiffs requested specific action,

such as consultation or listing as a federally recognized tribe, that the Department refused (*see*

Pls.' Mem. at 31), then Plaintiffs had to go through the process required to challenge Agency

failure to act, at 25 C.F.R. § 2.8 and 25 C.F.R. Part 83, which they have not done.  Plaintiffs have

therefore failed to exhaust their administrative remedies.  (*See* Fed. Defs.' Mem. at 16–20.)

Plaintiffs claim they do not need to exhaust those remedies, but that is not correct.

      Contrary to Plaintiffs' assertions, exhaustion in this case would not be futile.  The regula-

tions at 25 C.F.R. § 2.8 provide specific timeframes for Agency response and allow an aggrieved

party to seek judicial review if there is no response.  *See* 25 C.F.R. §§ 2.6, 2.8(b).  The D.C.

Circuit has endorsed the administrative Part 83 process as the only legally appropriate avenue for

seeking federal recognition.  *See Mackinac Tribe v. Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016);

*Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 218–19 (D.C. Cir. 2013); *James v. U.S. Dep't*

*of Health and Human Servs.*, 824 F.2d 1132, 1136–37 (D.C. Cir. 1987).  Under those regula-

---

and Human Servs., 824 F.2d 1132, 1136–37 (D.C. Cir. 1987).  To the extent Plaintiffs allege that
they are "federally acknowledged" (*see* Pls.' Opp. at 31–32), that assertion conflicts with the
allegations of their Verified  Complaint that the federal government does *not* acknowledge them
(*see* ¶¶ 238, 257; *id*. at 62 (verification)).  A verified complaint is given the same evidentiary
value as an affidavit.  *Grimes v. District of Columbia*, 794 F.3d 83, 94 n.5 (D.C. Cir. 2015)
(citing *Neal v. Kelly*, 963 F.2d 453, 457–58 (D.C. Cir.1992) (collecting cases)).  *See Pinson v.*
*U.S. Dep't of Justice*, 61 F. Supp. 3d 164, 176 (D.D.C. 2015) (allegations of plaintiff's verified
complaint contradicted assertions in declarations).  Plaintiffs thus cannot in their opposition
(Footnote continued)

tions, the Department is certainly capable of making the necessary legal determinations, contrary

to Plaintiffs' suggestion that it is not.  (*See* Pls.' Opp. at 39.)  Nor does the Department's alleged

past failures to "consult" with Plaintiffs demonstrate bias or "pre-determination" (*see* Pls.' Opp.

at 40); rather, it merely reflects that fact that the Department can only consult with federally

recognized, listed tribes.  And Plaintiffs do not enjoy that status.

### 2.    Plaintiffs Have No Claim Under APA § 706(2)

Plaintiffs have not identified any agency action already taken that would form the basis of

a reviewable claim under APA § 706(2), 5 U.S.C. § 706(2).  They suggest that the requisite

agency action was the 1934 "acknowledgment" of their alleged tribal status (*see* Pls.' Opp. at

35–36), but that supposed action would have been favorable to them, so it cannot be the basis of

their APA challenge.[13]  All Plaintiffs really seem to challenge are the alleged "policies, practices,

and customs" of the Department (*see* Pls.' Opp. at 35), which do not constitute final agency

action, as argued in the Federal Defendants' opening memorandum (Fed. Defs.' Mem. at 15–16).

### 3.    Plaintiffs Have No Claims Under the Indian Reorganization Act, the 1863 Act, and 1888–1890 Appropriation Acts

As explained in Federal Defendants' opening memorandum (Fed. Defs.' Mem. at 11–13,

20–21), Plaintiffs have no claim under the 1863 Act or Appropriations Acts of 1888–90 (and any

such claim would be time-barred, in any event).  Plaintiffs argue (*see* Pls.' Opp. at 40–41) that

they are not pursuing a private right of action under these Acts, but are instead advancing the

Acts as a source of substantive law that can inform an action for judicial review under the APA.

But while the APA does waive, under certain circumstances, the federal government's sovereign

---

memorandum simply ignore or contradict the allegations of their Verified Complaint.

[13] Even if the 1934 action could be construed as a final agency action that harmed Plaintiffs, any such claim based on that action would be time-barred as having accrued long ago.

immunity; it does not provide a source of substantive law.  (*See* Fed. Defs.' Mem. at 13–14.)

*Califano v. Sanders*, 430 U.S. 99, 105–07 (1977); *Gallucci v. Chao*, 374 F. Supp. 2d 121, 128

(D.D.C. 2005); *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Ashcroft*, 360 F.

Supp. 2d 64, 66 (D.D.C. 2004).  Plaintiffs plead no agency action or inaction that the Court can

review that would be informed by any provisions of the 1863 and Appropriations Acts, which do

not create duties running from the federal government to the Plaintiffs.  As the Federal Circuit

has ruled, those Acts *authorized* but did not *require* the expenditure of monies to benefit indivi-

dual Sioux Indians, *Wolfchild v. United States*, 731 F.3d at 1288–93,[14] so they do not support

any argument that Federal Defendants have taken action or not taken action *required* by those

enactments.  *See S. Utah Wilderness Alliance*, 542 U.S. at 62–65.  Plaintiffs therefore have no

APA claims based on those statutes.

     C.     <u>Plaintiffs' Claims are Barred by Claim- or Issue-Preclusion</u>

     As argued in Federal Defendants' opening memorandum (Fed. Defs. Mem. at 21–25),

Plaintiffs' claims are barred by claim- or issue-preclusion.  In response, Plaintiffs argue that

preclusion cannot be found where a case is dismissed for lack of subject matter jurisdiction (*see*

Pls.' Opp. at 41–43), and that there is not a sufficient identity of parties or issues between this

and the earlier litigation (*id*. at 43–44).

     Issue preclusion bars successive litigation of an issue of fact or law where "[1], the same

issue now being raised was contested by the parties and submitted for judicial determination in

the prior case; [2], the issue was actually and necessarily determined by a court of competent

jurisdiction in the prior case; [and] [3], preclusion in the second case does not work a basic

---

[14] The court also ruled that any claims founded on those statutes would be time-barred.  731 F.3d at 1291–91, 1292–93.

unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F. 3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).  Issue preclusion applies to jurisdictional issues such as standing.  *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 72 (D.D.C. 2016) (citing *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015)).  The goal of the issue preclusion doctrine is to "avert needless relitigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a person's day in court." *Cononsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 17 (D.D.C. 2013) (quoting *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983)).  Here, Plaintiffs have had more than ample opportunity to pursue their claims over the course of more than a decade of litigation.

Prior litigation brought by Plaintiff Mdewakanton Sioux Indians of Minnesota or its members resulted in the determination of issues that are binding on Plaintiffs in this case.  *Wolfchild v. United States*, 731 F.3d 1280 (Fed. Cir. 2013), held that (1) the Appropriation Acts of 1888–1890 did not create any "money-mandating" duty and therefore plaintiffs failed to state an actionable claim, *id.* at 1289–90, (2) that such claims were time-barred because Plaintiffs were on notice of the triggering facts long ago, *id*. at 1290–91, and (3) plaintiffs had no claim under the 1863 Acts; the Federal Circuit therefore affirmed the judgment of the Court of Federal Claims in the government's favor and reversed the part of the judgment in the plaintiffs' favor, *id*. at 1292–95.  *Wolfchild v. Redwood County*, 824 F.3d at 768–69, held that plaintiffs failed to state a federal common law claim under the Supreme Court's *Oneida* decision and its progeny and also failed to state a claim under the 1863 Act because that Act did not create a private right of action.  Thus, issues central to disposition of this case have already been litigated and resolved against Plaintiffs:  (1) they have long been on notice of facts underlying their claims (the alleged-

ly wrongful disposition of monies and lands); and (2) the 1863 and Appropriation Acts cannot be the source of substantive law relevant to judicial review of any claims in this case.

Plaintiffs never meaningfully counter Federal Defendants' discussion detailing the commonality of the plaintiff groups in the prior Federal and Eighth Circuit litigation, which supports Federal Defendants' claim- and issue-preclusion defenses.  (*See* Fed. Defs.' Mem. at 22–24 & nn.18, 19.)  Rather, Plaintiffs again assert that the Mdewakanton Sioux Indians of Minnesota consists of lineal descendants of those Indians whom Congress identified in the 1863 Acts.[15]  (Pls.' Opp. at 4 & n.18 (citing Compl. ¶ 33).)  Those individual Indians were identified on the 1886 and 1889 census rolls, from which the plaintiffs in the Federal and Eighth Circuit litigation also traced their descent.  (*See* Fed. Defs.' Mem. at 22–23 & n.19.)  And even if the plaintiffs in this and the Federal and Eighth Circuit litigation are not precisely coterminous groups, the plaintiffs in the earlier actions more than adequately represented the current Plaintiffs, as explained in the Federal Defendants' opening memorandum at 23–24.  For that reason, there is sufficient identity of plaintiffs between this and the prior litigation—enough to support a ruling that Plaintiffs in this action are collaterally estopped from relitigating issues that have been addressed (multiple times) by prior judicial decisions.[16]  *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).

---

[15] In the 1863 Acts, Congress sought to confer benefits on *individual* Indians, not any tribal entities.  *See* Act of Feb. 16, 1863, ch. 37, § 9, 12 Stat. 652, 654; Act of Mar. 3, 1863, ch. 119, § 1, 12 Stat. 819.

[16] The fact that the United States was not a party to the Eighth Circuit litigation does not prevent Plaintiffs from being precluded from relitigating issues that they had a full and fair opportunity to contest.  *See Allen v. McCurry*, 449 U.S. 90, 94–95 (1980) (collateral estopped may be raised by a non-party to the earlier suit); RESTATEMENT (SECOND) OF JUDGMENTS § 29 (AM. LAW INST. 2017) (same).

D.     Plaintiffs' Land Claims Must be Dismissed Under Fed. R. Civ. P. 19

As argued in Federal Defendants' opening memorandum (Fed. Defs. Mem. at 25–26),

Plaintiffs have not, and cannot, join a necessary party under Rule 19 of the Federal Rules of Civil

Procedure, and Plaintiffs' claim to land at Prairie Island Indian Community must be dismissed on

that basis.  In response, Plaintiffs assert that (1) at least in their view, no third party has an

interest in this litigation that requires joining any such party; and (2) Plaintiffs have no direct

claim against any third party and therefore no such party could be "required."  (*See* Pls.' Opp. at

44–45.)  Plaintiffs entirely ignore Federal Defendants' discussion of how the factors detailed in

Rule 19 require dismissal of Plaintiffs' land claim because a third-party with an obvious interest

in the subject matter of Plaintiffs' claims cannot be joined because it is immune from suit.

Under Rule 19(a)(1), a party is a "required party" if

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest
> . . . .

Fed. R. Civ. P. 19(a)(1).  Rule 19(b) sets out the factors the Court should consider in deciding

whether, if joinder of the absent party is not feasible, the case should be dismissed.  Plaintiffs

suggest that their claims to do not seek any interest in land, only declaratory relief under the

APA, and that no other party therefore has an interest in this case.  (*See* Pls.' Mem. at 44.)  Yet

that assertion is contradicted by Plaintiffs' claims and prayer for relief, which seek an order

requiring, among other things, that the Federal Defendants turn over to Plaintiffs the 30 acres of

land currently held in trust for the Prairie Island Indian Community.[17]  (Pls.' Opp. at 8; Compl.

¶ 90, Prayer for Relief ¶¶ 2, 3.)  Plaintiffs then suggest that because the Eighth Circuit ruled that

---

[17] Plaintiffs also demand 12 square miles of land under the 1863 Acts.  (Compl. ¶ 259, Prayer for
(Footnote continued)

Plaintiffs have no private right of action or common law remedy against the defendants in that litigation, and the Federal Circuit held that Plaintiffs have no direct claim for damages against the Shakopee Mdewakanton Sioux Community and the Prairie Island Indian Community in the Court of Federal Claims, Plaintiffs have no claim against the Prairie Island Indian Community in this case.  (Pls.' Opp. at 44–45 (citing *Wolfchild v. Redwood Cty.*, 824 F.3d at 767–70; *Wolfchild v. United States*, 77 Fed. Cl. 22, 26–31 (2007)).)  From that, Plaintiffs conclude that the Prairie Island Indian Community cannot be a "required party."  That conclusion does not follow.

Taking Plaintiffs at their word that they seek declaratory relief under the APA (among other things), including a declaration that the Prairie Island Indian Community's land belongs to them and not the Community, Plaintiffs do not need to be able in this litigation to assert a claim for land directly against the Community in order for the Community to have an "interest" in this litigation that may be "impair[ed]" by its resolution in the Community's absence.[18]  But because the Community cannot be joined since it is immune from suit, claims seeking an interest in the Community's land must be dismissed.[19]  (*See* Fed. Defs. Mem. at 25–26.)

III.   <u>CONCLUSION</u>

For the reasons set forth above, this action should be dismissed under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7).

---

¶¶ 2, 3.)

[18] Plaintiffs do not counter Federal Defendants' argument that the Prairie Island Indian Community cannot be joined because immune from suit.  (*See* Fed. Defs.' Mem. at 26.)  And although Plaintiffs point out that the Prairie Island corporate charter has been revoked (*see* Pls.' Opp. at 8–11), Plaintiffs do not argue that the dissolved corporation, rather than the Community, is the proper party to this action if joined under Rule 19.

[19] Plaintiffs' demand for 12 square miles of land under the 1863 Act must be dismissed under *res judicata* following the Federal and Eighth Circuit litigation, or, alternatively, on the same rationale relied on by the courts in that litigation.

Dated:  April 7, 2017                          Respectfully Submitted,

                                               JEFFREY H. WOOD
                                               Acting Assistant Attorney General

                                                 /s/ *David B. Glazer*
                                               DAVID B. GLAZER (D.C. 400966)
                                               Senior Counsel
                                               U.S. Department of Justice
                                               Environment & Natural Resources Division
                                               Natural Resources Section
                                               301 Howard Street, Suite 1050
                                               San Francisco, California  94105
                                               Phone:  (415) 744–6491
                                               Fax:      (415) 744-6476
                                               E-mail:  david.glazer@usdoj.gov

                                               *Attorneys for Federal Defendants*

Of Counsel:

James W. Porter
U.S. Department of the Interior
Office of the Solicitor

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 7, 2017, I filed the foregoing electronically through the Court's CM/ECF system, which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.


Dated:  April 7, 2017                    /s/*David B. Glazer*
                                         David B. Glazer

20