UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MDEWAKANTON SIOUX INDIANS : <br> OF MINNESOTA, *et al.*, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> RYAN ZINKE,[1] Secretary, : <br> United States Department of the Interior, *et al.*, : <br> : <br> Defendants. : | Civil Action No.: 16-2323 (RC) <br><br> Re Document No.: 17 |

**MEMORANDUM OPINION**

DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION

**I. INTRODUCTION**

Plaintiffs are currently engaged in litigation to compel various federal entities to recognize them as an American Indian tribe. Plaintiffs now seek a temporary restraining order, followed by a preliminary injunction, barring an election to amend the constitution of a different tribe, because Plaintiffs assert the amendments would impair their rights. Because Plaintiffs fail to demonstrate an irreparable injury, neither a temporary restraining order nor a preliminary injunction is appropriate.

**II. BACKGROUND**

Plaintiffs are several individuals and the Mdewakanton Sioux Indians of Minnesota, which they allege is an American Indian tribe to which they belong. Compl. at 2, ECF No. 1.

---

[1] Secretary Zinke is substituted as a defendant in accordance with Federal Rule of Civil Procedure 25(d).

Plaintiffs brought suit in this Court to compel the United States defendants "to acknowledge [the tribe's] existence and to enjoin the United States from continuing arbitrary decisions without informing the [tribe] that have the consequence of adversely affecting the rights or potential rights of the [tribe]." Compl. at 2. Defendants moved to dismiss the complaint on several grounds, *see generally* Fed. Defs.' Mot. Dismiss, ECF No. 10, and that motion remains pending.

Plaintiffs now seek a temporary restraining order, followed by a preliminary injunction, to stop the June 14, 2017 Secretarial election of the Prairie Island Indian Community.[2] *See generally* Pl.'s Mem. Supp. Mot. Temp. Restraining Order & Prelim. Inj. (Pl.'s Mot.), ECF No. 17. Plaintiffs assert that the amendments to the Prairie Island Indian Community's constitution at issue in the election would impair Plaintiffs' tribal rights. Pl.'s Mot. at 7–9; see also Pl.'s Mot. at 3 (asserting that the proposed amendments, if passed, would "effectively terminate [Plaintiffs' tribe] without congressional Act").

### III. LEGAL STANDARD

"Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, provides an 'extraordinary remedy' that is 'never awarded as of right.'" *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 901 F. Supp. 2d 54, 55–56 (D.D.C. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Because a temporary restraining order is "an extraordinary and drastic remedy," it should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Nat'l Head*

---

[2] Although the proposed order attached to Plaintiffs' motion for a preliminary injunction appears to be entered in error, *see* ECF No. 17-44, the Court understands Plaintiffs to seek first a temporary restraining order and then a preliminary injunction providing that "no future Secretarial Elections shall be held without prior approval by this Court." Pl.'s Mot. at 10, ECF No. 17.

*Start Ass'n v. Dep't of Health & Human Servs.*, 297 F. Supp. 2d 242, 246 (D.D.C. 2004) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

In order to receive preliminary injunctive relief, the movant must demonstrate "(1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief, (or at least, that the granting of injunctive relief is not adverse to the public interest)." *Paleteria La Michoacana*, 901 F. Supp. 2d at 56 (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) and *Federation Internationale de Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 68 (D.D.C. 2003)).

Regardless of how the other three factors are analyzed,[3] it is required that the movant demonstrate an irreparable injury. *See, e.g.*, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

---

[3] Plaintiffs argue in favor of a sliding scale approach to evaluating the four factors, in which a stronger showing on one factor can be used to compensate for a weaker showing on a different factor. Pl.'s Mot. at 23, ECF No. 17. The legal foundation for the sliding scale approach is uncertain after the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *See, e.g.*, *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) ("This court, however, has not yet needed to decide [if the sliding scale approach remains viable]. . . . [T]his case presents no occasion for the court to decide whether the 'sliding scale' approach remains valid after *Winter*."). Because, as discussed above, Plaintiffs do not demonstrate an irreparable injury, which is a necessary showing for preliminary injunctive relief, the Court need not resolve this issue today.

## IV. ANALYSIS

The Court considers if Plaintiffs have demonstrated that they will suffer an irreparable harm absent the issuance of a temporary restraining order or preliminary injunction, and concludes that they have not. Because showing an irreparable injury is mandatory, the Court does not consider the remaining factors.

Plaintiffs' motion devotes only a single paragraph to discussing the irreparable injury requirement. Pl.'s Mot. at 43–44. Plaintiffs argue that preliminary injunctive relief is necessary to avoid increased litigation expenses, specifically, that:

> Due to the actions of the federal guardian leaving the [Plaintiffs] without resources, the cost of the litigation is being borne by the Plaintiffs. The Plaintiffs' resources are limited. If the Plaintiffs' resources are exhausted by litigation expense, the litigation will end—an irreparable injury. Preserving the legal status quo reduces the cost of this litigation and makes it more likely the Plaintiffs will cross the litigation finish line.

Pl.'s Mot. at 43–44.

However, it is well established that litigation expenses are not an irreparable injury. The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). In general, "economic loss does not, in and of itself, constitute irreparable harm." *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). This is because an irreparable injury is one which is "beyond remediation"—and for economic harms "'[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297–98 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).

The rule against economic losses constituting irreparable harm applies with full force to litigation expenses. Litigation costs cannot constitute an irreparable injury for the purposes of granting a preliminary injunction. *See Live365, Inc. v. Copyright Royalty Bd.*, 698 F. Supp. 2d 25, 45 (D.D.C. 2010) (noting that "[t]he Supreme Court has held that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury,'" even when those costs "are likely to be substantial" (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980))).

The irreparable harm alleged by Plaintiffs is precisely the type of litigation costs previously rejected by the Supreme Court, and Plaintiffs offer no legal authority to the contrary. As to Plaintiffs' suggestion that they may not be able to "cross the litigation finish line," Plaintiffs cite no cases suggesting that this outcome would constitute an irreparable harm. Even if such a harm could suffice, Plaintiffs have not stated the applicable facts here with any specificity. Plaintiffs provide nothing more than a conclusory statement: they do not describe their expected expenses, expected costs, or the possible effects of denying preliminary injunctive relief on either. Indeed, the Court notes that briefing of Defendants' dispositive motion is already complete,[4] which presumably represents a large portion of expected litigation expenses (barring the instant motion, which Plaintiffs initiated).

In their reply, Plaintiffs expand their discussion of irreparable injury from one paragraph to two. *See* Pl.'s Reply Mem. Supp. Mot. (Pl's Reply) at 9–10, ECF No. 19. However, Plaintiffs still do not elaborate on the irreparable injury posed by litigation costs, except to state conclusorily that "Plaintiffs are not in a position of funding years of litigation." Pl.'s Reply at 9.

---

[4] Defendants filed a motion to dismiss, ECF No. 10, which Plaintiffs opposed, ECF No. 13, and Defendants replied, ECF No. 14. Also pending are Defendants' motion for judicial notice, ECF No. 11, and Plaintiffs' motion to file a surreply concerning the motion to dismiss, ECF No. 15.

Plaintiffs' claims that they may run out of money remain speculative and unclear. As discussed above, this does not suffice to overcome the general rule that litigation expenses are not an irreparable injury. Plaintiffs also briefly attempt to introduce a new irreparable injury. *See* Pl.'s Reply at 9. However, because this argument is new in Plaintiffs' reply, the Court will not consider it.[5] *See Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 695 n.3 (D.C. Cir. 2015) (refusing to consider new arguments for irreparable injury in a movant's reply brief because the opposing party "had no opportunity to respond" and the movant "offer[ed] no reason, much less an extraordinary one, for its failure to raise these arguments in its opening brief" (citing *CTS Corp. v. EPA*, 759 F.3d 52, 60 (D.C. Cir. 2014) and *United States v. Whren*, 111 F.3d 956, 958 (D.C. Cir. 1997))).

\* \* \*

---

[5] Even if the Court considered the new arguments in Plaintiffs' reply, Plaintiffs have failed to demonstrate an irreparable injury. An irreparable injury must "be both certain and great," and "actual and not theoretical." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal citations and quotations omitted); *see also id.* ("The moving party must show '[t]he injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" (citations omitted)).

Plaintiffs argue that "[n]one of the post-election procedures will restore to the [Plaintiffs] the pre-election right to request or object to the June 14, 2017 Secretarial election." Pl.'s Reply at 9. The suggestion that Plaintiffs may lose some ability to object to the election is new in their reply. *See, e.g.*, Pl.'s Mot. at 44, ECF No. 17 (summarizing the dispute over the Secretarial election as: "[Plaintiffs] contend[] the June 14, 2017 proposed Constitution is contrary to federal law"). However, Plaintiffs do not discuss what pre-election objections they wish to bring or explain why these alleged injuries would be great. Furthermore, Plaintiffs fail to explain why the loss of any pre-election objection would be an irreparable injury, given the admitted availability of post-election procedures.

Plaintiffs also suggest that they will be injured by the proposed amendments to the Prairie Island Indian Community's constitution, if enacted. Pl.'s Reply at 9. This alleged injury, however, is neither certain nor actual. The outcome of the Secretarial election is undecided. Even if the amendments prevail in the vote, the Secretary must still approve or disapprove the amendments, 25 U.S.C. § 5123(d)(1), and that approval would constitute a final agency action that Plaintiffs could challenge, 25 C.F.R. § 81.45(f). *Cf. United Farm Workers v. Chao*, 593 F. Supp. 2d 166, 170 (D.D.C. 2009) (rejecting a motion for a temporary restraining order because plaintiffs were unable to show that they would certainly be injured by new regulations).

As discussed above, Plaintiffs' motion for a temporary restraining order or preliminary injunction fails because Plaintiffs do not demonstrate an irreparable injury. This conclusion is further bolstered by the disfavored nature of injunctive relief barring an election when only one outcome of the election would allegedly impair the movants rights. Because the proposed measures may yet be voted down and the controversy avoided, many courts have declined to enjoin elections in analogous circumstances. *See, e.g.*, *Ranjel v. City of Lansing*, 417 F.2d 321, 325 (6th Cir. 1969) (reversing a preliminary injunction against a referendum on a proposition that allegedly violated the Fourteenth Amendment because "[w]e believe the better practice [i]s . . . [to] allow[] the election to proceed and rule[] on the validity of the measure after its passage"), *cert. denied*, 397 U.S. 980 (1970); *Nevada Rest. Ass'n v. Pest Comm.*, No. 3:08-CV-00118, 2008 WL 8225546, at *4 (D. Nev. July 15, 2008) ("Insofar as the few federal courts that have entertained such challenges [to ballot measures pre-election] are concerned, those courts have only done so where the proposed measures were plainly unconstitutional."); *Ajax Gaming Ventures, LLC v. Brown*, No. CVIA 06-336, 2006 WL 2302192, at *2–3 (D.R.I. Aug. 8, 2006) ("[T]he Court is not prepared to say without doubt that the proposed amendment is 'patently' unconstitutional, nor is this case of such an 'exceptional' nature as to warrant intervention before the election has yet come to pass . . . . This Court may never be called upon to rule on the constitutionality of the proposed amendment: the electorate may vote it down in November. Courts should not wade into constitutionally torrid waters unless doing so is unavoidable. That is not the case here." (citations omitted)); *Diaz v. Bd. of Cty. Comm'rs of Dade Cty.*, 502 F. Supp. 190, 193 (S.D. Fla. 1980) ("In this action, the plaintiffs claim they will be damaged by the results of the referendum; they will not be damaged by the act of voting itself. This Court has decided that the act of voting must be allowed. A determination of the constitutionality of the results

must wait until that now-hypothetical time when there may be actual results."). The rare exceptions to this rule occur mainly when the proposed measure is patently unconstitutional. *See, e.g., Otey v. Common Council of City of Milwaukee*, 281 F. Supp. 264, 276 (E.D. Wis. 1968) (blocking the submission of a "palpably unconstitutional" resolution to a referendum).

In this case, Plaintiffs have not argued, and this Court does not conclude, that the proposed amendments are patently unconstitutional. As in other election cases, this Court is not yet squarely faced with the controversy concerning the amendments because the proposed amendments may be voted down. Furthermore, even if approved by the voters, the proposed amendments face additional hurdles before they could take effect. The Secretary must either approve or disapprove the amendments. 25 U.S.C. § 5123(d)(1). If the Secretary approves the amendments, that approval would constitute a final agency action, 25 C.F.R. § 81.45(f), presumably subject to APA challenge by Plaintiffs. These reasons bolster this Court's conclusion that preliminary relief to prevent the election is inappropriate.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and a Preliminary Injunction (ECF No. 17) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 9, 2017                                                                  RUDOLPH CONTRERAS
                                                                                                  United States District Judge

8